FILED

JAN 1 1 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

Joyce Burnett
4408 39th Street, N.W.
Washington, D.C. 20016

v.

Amar Sharma
Anasuya Sharma
Amit Sharma
4801 41st Street NW
Washington, D.C. 20016

Washington Agents for Service, Inc.
Loewinger & Brand, PLLC
471 H Street, N.W.
Washington, D.C. 20001

Jennifer A. Renton, Esq.
531 Highland Dr.
Edgewater, MD 21037

Sharma Law Group (Formerly Sharma & Bhandari)
9911 Georgia Ave.
Silver Spring, MD 20902

District of Columbia Office of Corporation Counsel
441 4th Street, NW
Room 600 South
Washington, D.C. 20001

CASE NUMBER  1:06CV00037

JUDGE: Reggie B. Walton

DECK TYPE: Civil Rights (non-employme;

DATE STAMP: 01/11/2006

## COMPLAINT AND JURY DEMAND
(Unconstitutional Deprivation of Miscellaneous Rights)

### Introduction

1. Plaintiff, pro se, brings this action against the defendants and seeks injunctive and

declaratory relief, specific performance, and monetary damages, under the Civil Rights Act of

1866, as amended, 42 U.S.C. 1981 et seq, the Fair Housing Act of 1968, as amended (FHA), 42

RECEIVED

DEC 0 9 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

U.S.C. § 3601 et seq., Americans with Disabilities Act, 42 U.S.C. 12101 et seq., statutory and the common law for claims arising out of defendants' violations of plaintiff's rights.

### Jurisdiction and Venue

2.  Plaintiff brings this action against defendants to redress the violation and deprivation of rights secured by the Constitution of the United States, statutory and the common law.

3.  Plaintiff is a citizen of the District of Columbia.  The matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

4.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1343 and 42 U.S.C. §§ 1983 and 3613, and Fed. R. Civ. P.65(b) and 57.  Plaintiff also seeks relief under 18 U.S.C. § 241, and 18 U.S.C. § 242 for criminal remedies and penalties.

5.  Plaintiff also invokes supplemental jurisdiction of this Court over plaintiff's state claims against defendants for common law violations pursuant to 28 U.S.C. § 1367 as the common law claims form part of the same case or controversy.

6.  Venue is proper in this District pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to this claim occurred in the District.

7.  Plaintiff seeks to consolidate the previously filed complaints in the District of Columbia Superior Court including CA 51649-01, and 02CA9879 with the instant matter, pursuant to Fed. R. Civ. P. 42 (a) because: the instant action relates back to the claims filed in Superior Court, so that all claims can be litigated together, in the interests of justice, and public policy, to avoid judicial bias, and to provide the plaintiff with the opportunity to litigate her claims in a full and fair trial on the merits.

### Parties

2

8. Plaintiff, JOYCE BURNETT, (Burnett) appears before this court pro se. Burnett is an African-American tenant who sublet a room from the primary tenant and later entered an oral agreement with the owner to purchase the premises. Burnett is no longer in possession. Jennifer Renton (Renton), then Jennifer Jones, was the primary tenant. By information and belief, Amar Sharma (Sharma) is the owner of the residence located at 4801 41st Street NW, Washington, D.C. 20016 (premises). Upon information and belief, Anasuya Sharma is the wife of Amar Sharma (Sharma). Upon information and belief, Amit Sharma is the adult son of Amar Sharma.

9. Onkar Sharma of Sharma & Bhandari, now Sharma Law Group (SLG), is the first attorney to file eviction proceedings against Burnett on behalf of Sharma. The office is located at 9911 Georgia Ave. Silver Spring, MD 20902. Michael Brand and Marc Nocera of Loewinger & Brand (L& B) are the second firm to represent Sharma in eviction proceedings against Burnett. The primary office is at 471 H Street, N.W. Washington, D.C. 20001. The Department of Consumer and Regulatory Affairs (DCRA) is a District of Columbia government agency charged with the inspection, operation and management of residential housing for compliance with housing regulations under the laws of the District of Columbia. Plaintiff has been, and continues to be adversely affected by the actions and practices of the defendants, jointly and severally. Such actions violated plaintiff's Constitutional and statutory rights, placed plaintiff at risk of death, and caused permanent injury to the plaintiff.

10. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that at all times mentioned in this petition, attorneys Marc Nocera and L&B partner Michael, Esq. were acting as agents, servants, and employees of Defendant Sharma and his

3

family, and in doing the things described in this petition were acting within the course and scope of this agency, service, employment with permission and consent express and implied, and for the benefit of defendant Sharma, and in so doing entered into a conspiracy.

11. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that SLG and Onkar Sharma in particular acted as the agent, servant, and employee of Sharma and in doing the things described in this petition is acting within the course and scope of this agency, with permission and consent express and implied, and for the benefit of Sharma, and in so doing entered into a conspiracy.

12. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that the state actors referenced in this petition conspired with Sharma and SLG in doing the things described in this petition.

13. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Renton conspired with Sharma, SLG and L&B, and/or the state actors, in doing the things described in this petition.

14. Plaintiff is informed and believes, and on the basis of such information and belief, alleges that Sharma, both his counsel, Renton, and the state actors acted in consort with significant state aid such that the defendants would not have been able to deprive the plaintiff of fundamental rights without the aid and influence of state actors.

15. Plaintiff is informed and believes, and on the basis of such information and belief, alleges that all above referenced defendants acted in conjunction with each other at various times, willfully, with malice, and knowledge be held jointly and severally liable.

16. All references to Sharma support the allegation of conspiracy as Sharma is at all

4

times represented by counsel. All defendants had a meeting of the minds to carry out the

deprivation and violation of plaintiff's rights.

### Facts

17. Plaintiff brings this action as Sharma leased the premises in violation of housing

regulations, and when plaintiff brought the violations to his attention, he discriminated against

the plaintiff on the basis of race and disability and sought to evict her. As a member of a

protected group, the plaintiff is entitled to certain protections under the law. Similarly, the

primary tenant sought to discriminate against the plaintiff given her own inability to acquire the

premises due to a bankruptcy and insufficient income.

18. The plaintiff met Sharma, the owner within two weeks of moving onto the premises.

He invited Burnett and Jones over for tea. Shortly thereafter he came over to the house to look at

work Winston, his workman was conducting. In the basement, the furnace was making

scratching noises. The plaintiff separately asked both Jones and Sharma what that noise was.

Both Sharma and Jones replied that is was nothing. A large thick blanket covered part of the

wall which would later reveal a severe mold problem.

19. Prior to moving in, the plaintiff discussed the Jones-Burnett lease with Jones. A true

and correct copy of this agreement is attached to this complaint and incorporated by reference as

Exhibit 1. Jones informed the plaintiff that she had no written lease with Sharma, and that

Sharma handled all the repairs unless it was something really small.

20. Sharma and his family had leased the premises to a white woman, Jones, who had

trouble paying bills and even declared bankruptcy to avoid paying her law school loans, but he

refused to even consider Burnett who resided on the premises and was ready, willing and able to

5

purchase and or lease.

21. Having never resided on the premises in approximately thirty years of ownership, Sharma and his family relocated from a short distance away in Maryland to the premises.

22. Defendants have engaged in behavior that caused harm and injury to the plaintiff including fraud and obstruction of justice. Defendants have intentionally misrepresented material documents to the Court and upon which the Court has relied. Defendants have failed to disclose material information necessary for the prosecution of this case. Defendants have engaged in abuse of process by filing multiple actions on the same cause of action after a final judgment in plaintiff's favor. Defendants further engaged in malicious prosecution by having the plaintiff wrongfully evicted from the premises.

23. Plaintiff signed the lease for one room of the premises on June 14, 1998. Under the lease she is responsible for one third of the rent. When Burnett moved onto the premises there was already a second subtenant living on the premises. Jones (now Renton) regularly sublet rooms throughout her stay on the premises. See Connie Lyerly Statement at Exhibit 2 incorporated be reference. Sharma was aware of and consented to Renton's practice of subletting to whoever she selected.

24. Jones lacked sufficient income to cover her rent, utilities, and expenses. Once the plaintiff paid two months rent at once so that Renton would have a little money. Another time utilities were about to be turned off and the plaintiff paid the bill. Sharma had offered the premises to Renton but her financial situation prohibited her purchase of the premises.

25. Sometime in the fall of 1998, the plaintiff discussed purchasing the premises from Sharma, the owner. Sharma agreed to sell the premises to the plaintiff. The plaintiff later had the

6

premises inspected and appraised, and made a written offer which she gave to Winston for

Sharma. Winston presented the offer to Sharma. At trial, Brand and Sharma represented that

Winston did not exist.

26. The inspection and appraisal made the housing code violations critical. Sharma

represented that the repairs would be completed. Sharma knew or should have known of the

unsafe conditions at the premises as they were present when he came by for repairs and the

plaintiff specifically asked about the furnace.

27. Housing code violations included water leaking from the second floor toilet through

the walls and ceiling of the fist floor kitchen to create toxic mold. The furnace was not installed

in compliance with the District of Columbia code. The chimney was also blocked. The

Department of Health determined that there was a mold problem on the premises. Black toxic

mold was present on the premises.

28. Sharma willfully refused to make repairs even after Washington Gas placed a red

danger tag on the furnace and told Burnett she could not use it.

29. Defendants were negligent in the upkeep and maintenance of the premises, demanded

that the plaintiff pay far more than the white tenant to even be considered, and refused to provide

services that had been previously provided to the white tenant. Defendants' tortious and negligent

actions are ongoing with damages continuing to flow from the entire conduct.

30. Despite the numerous, life threatening housing code violations, Sharma continued to

promise that the repairs would be done and collected rent.

31. Sharma, the landlord, failed to obtain necessary permits and licenses required for

housing providers. He further failed to bring the house up to code prior to renting it out and

thereby carelessly left others in danger so that he could profit. Even after Burnett's wrongful

eviction, Sharma failed to obtain required permits for modifications to the premises.

32. The premises was in an unsafe and uninhabitable condition prior to and throughout

plaintiff's tenancy resulting in an illegal rental of the premises.

33. Sharma and his adult son, Amit, knew or should have known of the unsafe

conditions, as both father and son were present on the premises when numerous repairs were

being completed.

34. Even after Sharma knew there was a serious problem on the premises, he refused to

install CO detectors. The plaintiff had to install them herself.

35. Supervisory personnel from DCRA who had come and by inspected the premises

absolutely refused to cite Sharma for the CO violation.

36. During a hearing, one DCRA officer instructed Sharma and his counsel exactly what

he needed to do to win his case in Burnett's presence. When Burnett sought the mandatory

recording of the hearing, it was mysteriously blank even though it was working at the beginning of

the hearing.

37. As a direct result of the Sharma family, SLG, and state actors' negligent and reckless

actions, the plaintiff was exposed to the clear and present danger of toxic levels of CO.

38. As a result of the prolonged exposure to CO and the toxic mold present at the

premises, plaintiff suffered from and continues to suffer from a seizure condition, multiple

tumors, dizziness, headaches, joint soreness, disorientation, and memory problems.

39. The plaintiff has no pre-existing medical conditions.

40. In anticipation of purchasing the premises, the plaintiff made limited improvements to

8

the premises.

41. During the tenancy, Burnett caught Renton, opening her mail and she filed a complaint. Burnett also discovered that Renton was using her computer. When Burnett had a lock installed on her room door, Renton became angry and hostile, shouting that she needed access to the room (in case of a fire) and that she was the "landlord." She hollared at the locksmith that he could not install a lock. She tried to block him from entering the room.

42. Burnett went to Sharma's house and discussed obtaining her own mailbox with him. He agreed.

43. On or about November, 1999, Renton and her new husband moved from the premises. The tenant had set out a separate mailbox with the Sharma's permission, Renton knocked it down with the hammer and came up to Burnett's room and threatened her. When Burnett filed for a restraining order, the judge denied it stating that it would be bad for his economic future. The judge ignored the threat to Burnett. (Renton was known to have a temper, had been fired from his last job, and had punched a whole in the wall at the premises.

44. Sharma gave Burnett his son Amit's resume to review for comment.

45. On or about November, 1999, and (continuing to the present time), Sharma and his family have refused to sell, rent, or lease, the premises to the plaintiff because she is black.

46. On or about November, 1999, and (continuing to the present time) Sharma, has refused to negotiate, make, or enforce a contract for the premises with the Plaintiff based on race.

47. On or about November, 1999 and (continuing to the preset time) Sharma made the premises unavailable to the plaintiff.

48. Sharma showed the premises to various prospective tenants after placing a sign on a

tree while the tenant still resided on the premises. Sharma even had the plaintiff show her room too. Subsequently, Sharma selected a white couple while representing to the plaintiff that the premises was unavailable.

49. Plaintiff filed a complaint with the Office of Human Rights which resulted in a Determination of Probable Cause of discrimination based on race. A copy of the finding is attached as Exhibit 3 incorporated by reference.

50. Sharma has repeatedly maintained that the tenant never contacted him and that by the time she reached him, he had already rented the place out to the white couple. Sharma further stated that he never knew the plaintiff was there.

51. On or about November, 1999, until the plaintiff was wrongfully evicted, Sharma and his family worked together in their side business of renting, and selling residential properties. The Sharma's sold another property to a white couple wh had rented from them near the Glover park area. On several occasions, Anasuya Sharma failed to communicate or delayed communication of critically needed repairs to Sharma. Once she hung up the phone on the plaintiff after the plaintiff had identified herself. Mrs. Sharma refused to pick up the phone when the plaintiff called back. When the plaintiff had initially met Mrs. Sharma, the plaintiff extended her hand, but Mrs. Sharma refused to shake her hand.

52. On numerous occasions, Amit, supervised substandard repair work at the premises. The work sometimes had to be done a second or even a third time. Amit also made several appointments with the plaintiff and failed to show up causing Burnett to lose valuable time from work.

53. On or about November 15, 1999, and November 29, 1999, Sharma sent the plaintiff a

10

letter informing her of his intention to reclaim the premises and stating that the locks would be changed.

54. Sharma had been cited for housing code violations approximately ten times.

55. Sharma and his counsel filed approximately seven actions for eviction against the plaintiff.

56. Judge Jackson determined that the plaintiff is a tenant and is entitled to service of a notice to quit.

57. Judge Bayly dismissed the landlord's case with prejudice.

58. Sharma and his counsel failed to challenge the above judgments Counsel pleaded the same causes of action that had already been finally ruled upon. Counsel failed to comply with the Jackson Court Order that a notice to quit had to be served.

59. L & B took over the case from Sharma, Esq. Marc Nocera, an attorney for L&B sent the plaintiff a copy of a motion he had filed which would terminate the case in favor of Sharma assuming that Burnett had failed to timely pay her rent into the court registry. Burnett had made a timely payment into the court registry and filed a counter motion which would terminate the case conclusively in her favor. Prior to going to trial, two cases were consolidated. Burnett informed the court of what Nocera had done. The court ignored her and Nocera remained silent. Burnett informed the next judge and was similarly ignored. Nocera's silence was a misrepresentation of material evidence to the court.

60. Nocera failed to file this motion with court. It does not appear in the court docket. Judge Burgess ruled against the plaintiff even though a final adjudication had already taken place. The judge also ignored Nocera's motion and the plaintiff's medical condition.

11

61. The plaintiff had had a seizure about ten days prior to the trial and asked for a delay which was denied. As a result of her mental impairment, Burnett was not ready for trial, was unable to call any witnesses, and used hardly any exhibits at all. She was clearly impaired from representing herself and was forced to sit down at times because she was dizzy and weak.

62. Sharma and his counsel presented a lease signed by Renton stating that she could not sublet without his consent and approval.

63. L & B filed an action against plaintiff in violation of Super. Ct. R 11. L & B threatened the plaintiff on behalf of his client when Burnett could not appear at the premises at the beck and call of Sharma for an appointment with a mold company.

64. Sharma and his counsel failed to arrange to cover the costs of housing for the time repairs were being conducted and plaintiff was unable to remain on the premises as mandated by the D.C. Code.

65. At trial, the Court refused to consider housing code violations and other defenses that made the leasing of the premises illegal.

66. On or about June 25, 2003, Sharma and his counsel had the plaintiff wrongfully evicted from the premises.

67. In response to the defendants violations of plaintiff's rights and subsequent injury, the plaintiff demands relief for claims not limited to but including the following:

I        Civil Rights Violation

II       Fair Housing Act Violations

III      Americans With Disabilities Act

IV       Per se Negligence

12

V        Negligent Maintenance of Premises

VI       Violation of Permanent Injunction and Court Order

VII      Maintenance of Nuisance

VIII     Breach of Covenant of Quiet Enjoyment

IX       Wrongful Eviction

X        Breach of Warranty of Habitability

XI       Self Help

XII      Retaliation

XIII     Breach of Contract /Failure to Contract

XIIII    Defamation

XV       Fraud

XVI      Assault

XVII     Abuse of Process

XVIII    Promissory Estoppel

XVIIII   Malicious Prosecution

XX       Intentional Infliction of Emotional Distress

XXI      Unjust Enrichment

XXII     Lack of Jurisdiction

XXIII    Conspiracy

XXIIII   Obstruction of Justice

XXV      Perjury

13

## CAUSE OF ACTION - CIVIL RIGHTS VIOLATIONS

68. In October, 1999, after subletting a room from the primary tenant for approximately one year, and with knowledge that the plaintiff resided on the premises, Sharma refused to lease directly to the subtenant based on racial and economic bias.

69. Sharma had agreed to sell the premises to the plaintiff, the plaintiff acted in reliance on that promise, and suffered injury as a direct result of such reliance. Thereafter, Sharma refused to sell or lease the premises to the plaintiff and actively sought out other white tenants.

70. On or about November, 1999, Sharma refused to rent or sell the premises to the plaintiff, discriminated against the plaintiff in the terms, conditions, and services provided, and represented that the premises was unavailable but then rented it to white persons.

71. Sharma committed the above acts based on race with the knowing assistance of the other defendants.

72. The DCRA refused to cite Sharma for deadly levels of carbon monoxide and black toxic mold in violation of D.C. Code 42-3651.02.

73. During the summer of 2003, Sharma and his counsel stated that they had the premises appraised but refused to supply the plaintiff with a copy of the document.

74. The acts of the defendants as described in this complaint were done in bad faith, and maliciously with the intent to deter the plaintiff from exercising her constitutional rights to a fair trial.

75. All of the acts explained above were completed maliciously and intentionally in furtherance of the conspiracy to deprive the plaintiff of her civil rights under color of law.

(Equal rights under the law)

76. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

77. 42 U.S.C. § 1981 prohibits the denial and impairment of equal rights under the law based on race.

78. Sharma leased the premises to a white tenant who had declared bankruptcy and who could not afford the premises rather than rent or sell to Burnett because of her race.   A number of other tenants had resided at the premises over the years with Sharma's approval and consent. Sharma did not attempt to dehumanize any of the other tenants by claiming that they were not tenants and treating them in an offensive manner.

79. Renton and her new husband tried to discourage the plaintiff from purchasing the premises.  When Renton left the premises, Sharma refused to contract with the plaintiff.  He maintained that he and his wife only wanted to rent to couples.

80. The plaintiff approached the owner about leasing the house, the very next day after the primary tenant gave notice, before he put up a sign, and before he leased the premises to anyone. Sharma however, claims that he rented out the premises prior to Burnett asking to lease the premises.

81. Sharma discriminated against the plaintiff based on race by only leasing the premises to white persons and by refusing to lease to the plaintiff even though she was ready, willing, and able to lease the premises, and in so doing denied and impaired the plaintiff's equal rights under the law.

82. By filing frivolous eviction actions against the plaintiff after final judgments had been rendered, and constantly harassing the plaintiff by all their actions above, Sharma and his counsel

did discriminate against the plaintiff based on race and interfered with her ability to make and enforce contracts.

83. By prosecuting a frivolous and malicious action against the plaintiff after Nocera filed his motion, L & B did discriminate against the plaintiff based on race and by so doing violated her equal rights under the law so that she was prohibited from entering into a lease and or purchasing contract because of her race.

84. Sharma, both his counsels, Renton, and the state actors worked in conjunction and did discriminate against the plaintiff based on race and in so doing denied and impaired her equal rights under the law and under color of law.

85. By their actions noted above, Sharma, both his counsels, Renton, and the state actors did violate plaintiff's rights under 42 U.S.C. § 1981 causing injury to the plaintiff such that she was discriminated against based on race in housing and wrongfully evicted from the premises which caused humiliation, embarrassment, and pain and suffering.

86. Sharma and his counsels further caused disparate impact by attempting to charge the tenant a great deal more than the white primary tenant while under the same lease, by increasing the rent and failing to follow statutory requirements, and by seeking additional monies for back rent when the rent was paid in full in a timely fashion. Where race is a factor as in the instant action, recovery of damages is mandated by law.

87. Sharma assumes that because Burnett is a student, she cannot afford to rent and or purchase the premises.

## SECOND CAUSE OF ACTION

(Property rights of citizens)

16

88. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

89. 42 U.S. C. § 1982 protects a citizens right to lease, sell and purchase real property exclusive of race.

90. The owner continually informed the plaintiff that as a student she could not afford the premises. He sought out white tenants instead by placing a sign on a tree in a neighborhood that is at best a mere six percent African American according to published reports.

91. Sharma and S&B informed the plaintiff that the locks to the premises would be changed, an avenue of self help which is prohibited by law and which has been abrogated by statute. Sharma and S & B violated plaintiff's rights to lease and purchase real property.

92. L&B violated plaintiff's rights to lease and purchase real property by prosecuting an unlawful action that failed to meet statutory requirements, by ignoring a court order that a notice to quit must be served, and by filing a frivolous and malicious suit against the plaintiff to prohibit her from leasing and or purchasing the property.

93. Each of the above named defendants violated plaintiff's rights under 42 U.S.C. § 1982 based on race resulting in the plaintiff being denied the right to lease and or purchase the premises given the acts they committed.

### THIRD CAUSE OF ACTION

(Deprivation of property under color of law)

94. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

95. Plaintiff's rights are guaranteed by the Constitution and made applicable to the states

17

through the Fourteenth Amendment Due Process Clause of the Fifth Amendment's Due Process Clause. 42 U.S.C. § 1983 prohibits the deprivation of rights secured by the Constitution and laws.

96. Plaintiff's possessory interest in the premises is a property right.

97. When Sharma challenged Burnett's tenancy, the trial court ruled in Burnett's favor twice. Neither judgment was appealed and thus became final. Final judgments bar subsequent litigation between the same parties on the same or related cause of action under the principles of res judicata, collateral estoppel, and law of the case. Both S&B and L&B misrepresented to the court that the later cases were based on new and or different causes of action.

98. As a tenant in the District of Columbia, plaintiff's tenancy is subject to the provisions of the Rental Housing Act of 1985, 42-3501, et seq.

99. D.C. Code 42-3505.01 provides that no tenant can be evicted for any reason other than for non payment of rent without written notice that complies with the statute.

100. Tenant Burnett paid her rent timely and was not given proper notice. She was wrongfully evicted and her claim to possession is not moot. She maintains a continuing interest in the possession and purchase of the premises.

101. Plaintiff Burnett was dispossessed of her constitutionally protected rights by the coordinated actions of the various defendants explained above. Burnett submitted a sworn affidavit attesting to the fact that the owner has never rented the premises to blacks, that she actually resided on the premises at the time, and that she was ready, willing, and able to lease and purchase the premises, but for the owner and his family and S&B's and L&B's discriminatory practices.

18

102.  Because of the actions of the defendants, and as a proximate cause thereof, the

plaintiff has been denied her right to property which is secured by the Constitution and laws in

violation of 42 U.S.C. § 1983.

103.  Sharma states that he sold his Broad Street house and then wanted to move onto the

premises.  The sale of the house had nothing to do with the claim for personal use other than a

ploy to evict Burnett.  The premises was offered for rent to a white tenant and the Bayard Street,

Bethesda, MD home where the Sharma's had resided for a number years was put up for rent.

## FOURTH CAUSE OF ACTION

(Violation of equal protection of the law)

104.  Plaintiff hereby repeats and incorporates by reference the allegations set forth in the

paragraphs above as though fully set forth here.

105.  Plaintiff brings this claim under 42 U.S.C. 1983 which mandates equal protection of

the law.

106.  Sharma assumes that Burnett cannot afford the premises and admits he never asked

her.  He states that by the time Burnett contacted him via letter, the premises was already rented.

Sharma states that he knew Burnett was there but rented to someone else anyway.

107.  Sharma in conjunction with S&B and L&B, and Renton, and the state actors,

completed various acts in furtherance of the conspiracy to deprive the plaintiff of the equal

protection of the law.

## FIFTH CAUSE OF ACTION

(Conspiracy to Deny Protected Rights)

108.  Plaintiff hereby repeats and incorporates by reference the allegations set forth in the

19

paragraphs above as though fully set forth here.

109. A. 42 U.S.C. § 1985 prohibits conspiracy to interfere with civil rights. Section (2) prohibits the obstruction of justice and intimidation of a party by conspiracy.

110. Because of the dangerous housing code violations, the premises was not in a legally habitable condition when the plaintiff and or the primary tenant moved onto the premises. Any written contracts permitting habitation would be illegal. Sharma and Renton entered such a contract with knowledge of the dangers to human life posed on the property.

111. Sharma continually refused to rent and or sell to Burnett while failing to make timely repairs of life threatening housing code violations. S&B failed to appear in court and refused to come to the phone when the court telephoned him directly. Sharma and his counsel refiled after a dismissal with prejudice.

112. Each subsequent filing was frivolous and malicious on the part of Sharma and both counsel with blatant misrepresentations to the court. Such filings were acts in furtherance of the conspiracy to deprive the plaintiff of her civil rights. Renton submitted false sworn documents to the court as part of the foregoing conspiracy.

113. The defendants acts are retaliatory and based on racial discrimination. Defendants' actions as described above support the plaintiff's allegation of obstruction of justice and the willful intent to conspire with the other defendants to deny the plaintiff her rights.

114. The plaintiff was discriminated against on the basis of race, gender, pro se litigant status, and as a person with a disability. Race, gender and disability are protected classes.

115. B. 42 U.S.C. § 3 prohibits depriving persons of rights and privileges, and acts in furtherance of the conspiracy that results in injury to the party.

20

116. The defendants deprived the plaintiff of such rights and privileges by failing to maintain and repair the premises and keep the premises in a habitable condition, by failing to cite the premises on housing code violations, and providing Sharma with specific instructions to win his case. The plaintiff sustained physical injury and economic injury, remains on medication, and suffers from seizures and various other medical conditions.

117. The manufacture of a lease which prohibits subletting after the fact is an act in furtherance of the conspiracy to deprive the plaintiff of her rights. See Sharma-Renton lease above. Defendants continued legal actions are also further actions the conspiracy and aggravated the plaintiff's medical condition causing the plaintiff to lose her job and causing her further embarrassment, pain and suffering.

118. In the alternative, even if the signatures are authentic, the lease has long since expired, has no legal effect, and clearly does not prohibit subletting.

### SIXTH CAUSE OF ACTION

(Failure to prevent known conspiracy to deprive rights)

119. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

120. 42 U.S.C. § 1986 provides a cause of action against those who failed to prevent a conspiracy.

121. Having established the elements of conspiracy, and having made a claim under § 1985, Burnett is entitled to recover under § 1986.

122. Amit Sharma worked on the premises with repairmen and instructed them then to turn off the hot water to harass and intimidate the plaintiff in an act to further the conspiracy in an

21

effort to interfere with the tenant's civil rights.

123.  Sharma states that Amit entered the premises to conduct business for his father even though he was not invited and did not have the permission of Burnett to enter.

124.  Amit Sharma made appointments for work to be done at the premises and then failed to show up on several occasions causing the tenant to lose valuable time at work in an act in furtherance of the conspiracy.

125.  Anasuya Sharma hung up the phone on Burnett when she telephoned to report large problems at the house like a burst water pipe in furtherance of the conspiracy.

126.  Sharma with his wife and son did by their action enter into a conspiracy with each other to deprive and interfere with the civil rights of the plaintiff, and committed acts in furtherance thereof.

127.  By their actions described above, and by refiling the same case several times, the defendants did form and participate in a conspiracy and commit acts in furtherance thereof.

128.  By her actions described above, Renton did knowingly participate in a conspiracy, and committed acts in furtherance thereof.

129.  All defendants had knowledge of the conspiracy to deprive the tenant of her civil rights and or to interfere with the tenant's civil rights, and the wrongful acts committed in furtherance thereof.  These same parties had the power to prevent and aid in the prevention of the commission of the conspiracy, and failed to do so.

130.  In doing the acts alleged in this petition, defendants knew or should have known that their actions were likely to deprive plaintiff of protected rights and cause injury to plaintiff. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that the

22

defendants intended to cause injury to the plaintiff and acted with a willful and conscious

disregard of plaintiff's rights as secured by the U.S. Constitution, federal statute and local law,

thus entitling plaintiff to injunctive and additional relief requested.

131. Unless restrained by injunction, the defendants will continue to violate plaintiff's

right to possession of the premises and to continue to discriminate against the plaintiff in housing

based on race.

132. The plaintiff has no adequate remedy at law. Not even monetary damages will afford

adequate relief for the fear, humiliation, injury, numerous lost opportunities, and consequences to

plaintiff's health caused by this matter.

133. Plaintiff is entitled to the funds from the registry with interest and to damages given

the violation of her civil rights and failure to comply with housing code regulations, in violation

of D.C. Code 42-3505.01. The acts of the defendants, which the plaintiff seeks to enjoin have

already produced irreparable injury to the plaintiff by denying her a place to live, business

opportunities and employment in a neighborhood where she has resided for a number of years and

has established close and continuing relationships.

## SEVENTH CAUSE OF ACTION

(Conspiracy with unacceptable risk of loss)

134. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the

paragraphs above as though fully set forth here.

135. Defendants actions constitute an intentional conspiracy, to injure, threaten and

intimidate, under color of law to deprive the plaintiff of specific rights protected by the

Constitution, and federal statute creating an unacceptable risk of loss and injury to the plaintiff in

23

violation of 18 U.S.C. § 241 and 18 U.S.C. § 242.

136. Because of the actions of defendants and as a proximate cause thereof, plaintiff has been denied her rights to equal housing opportunity in violation of the FHA, the Civil Rights Act, the ADA, and the Human Rights Act of the District of Columbia, based on race, disability, and matriculation.

137. Because of the actions of the defendants and as a proximate cause thereof, the plaintiff suffered physical and economic injury in addition to incidental damages.

138. Because of defendants' actions and as a proximate cause thereof, and without any actions of the plaintiff contributing thereto, plaintiff suffered mental anguish, pain and suffering.

139. Defendants' actions are willful, malicious, and reckless, entitling the plaintiff to punitive damages. Defendants by their acts described above did conspire to create an unacceptable risk of loss.

140. Sharma states that he and his family have been landlords since the 1960's. Despite accepting rent and placing others at risk, Sharma and his family never registered the properties with the proper authorities and failed to comply with the RHA and D.C. Code which mandate safe and habitable premises. Ignoring the law, he rented to Renton for a period of ten years.

### FAIR HOUSING ACT VIOLATIONS

141. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

142. This action involves the pattern and practices of defendants denying housing on the basis of race and disability, practices in violation of the FHA and the Fair Housing Amendments Act of 1988 (FHAA).

143. Plaintiff is a member of a protected class who rented and sought to continue renting and or purchase the premises, and who has been and continues to be adversely affected by the acts, policies and practices of the defendants complained of above.

144. At all times during plaintiff's tenancy, Sharma and his family have been engaged as partners in the business of renting, maintaining, and selling real estate.

145. Sharma and his family treat white persons interested in housing differently from black persons interested in housing. Defendants similarly treat disabled and non-disabled renters and purchasers differently resulting in disparate treatment and impact.

146. The 1988 Amendments to the FHA, by their terms, render invalid any law that purports to require or permit any discriminatory housing practice. 42 U.S.C. § 3615. By their actions described above, defendants under color of law, conspired to deprive the plaintiff of protected rights based on race and disability in violation of 18 U.S.C. 241, and 242, and the FHA.

REFUSAL TO RENT AND SELL BASED ON RACE AND DISABILITY

147. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

148. The actions of the defendants referenced above, constitute violations of plaintiff's rights including but not limited to:

(i)    refusal to sell or rent after the making of a bona fide offer, and refusal to negotiate for the sale or rental of, or otherwise make premises unavailable to plaintiff because of race and disability and matriculation; and

(ii)    discrimination against the plaintiff in the terms, conditions, and privileges or sale and rental or premises and services based on race and disability;

25

(iii)    misrepresentation by defendants that the premises is unavailable based on race and disability;

(iv)    interference with persons on account of their having exercised their rights;

(v)    failure to make reasonable accommodations

149. Sharma states that he first found out Burnett was on the premises in June of 1999. He reiterates this statement again. He admits that he had never lived on the premises. Sharma states that he did not know Renton sublet rooms. Sharma then contradicts himself stating that Renton had roommates when she could not afford the house. Sharma further states that he knew Burnett could not afford the premises.

150. Sharma states Burnett did not ask him to rent the premises. He says Burnett only wrote a letter.

151. Defendants are in violation of rights protected under 42 U.S.C. §§ 3601, 3604 (a), (b), (c), (d), (f), 3617, and 3631. Defendants' actions constitute a continuing pattern of interference, coercion, intimidation, in violation of the FHA, the FHAA, and the DCHRA.

## AMERICANS WITH DISABILITIES ACT

152. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

153. The plaintiff has developed multiple tumors that are debilitating and cause grave pain. The plaintiff has been hospitalized at Georgetown University Hospital, Sibley Hospital, and George Washington University Hospital as a result of seizures while on medication. Plaintiff's conditions qualifies as a disability under the ADA, 42 U.S.C. § 12102.

154. The plaintiff is currently on medication and is unable to drive an automobile because

26

her license has been suspended for approximately three years.

155. After causing the plaintiff's disability, Sharma and his family continued to refuse to rent and sell the premises to Burnett on the basis of her disability.

## VARIOUS STATUTORY AND COMMON LAW OFFENSES

156. (1) RENT INCREASE WITHOUT NOTICE OR HEARING

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

157. The plaintiff resided at the premises as a subtenant with the knowledge and consent of Sharma.

158. Sharma says the house rented for $1600 even though there were severe life threatening housing code violations and he failed to comply with local statutes.

159. Sharma increased the rent without following statutory procedures mandated in the Rental Housing Act. Sharma attempted to raise the rent again on or about December, 1999, while refusing to lease and or sell the premises to the plaintiff. Sharma failed to provide written notice of the rent increase to the plaintiff, and there was no hearing. Sharma also failed to petition DCRA.

160. (2) CAUSE OF ACTION - **Negligence**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

161. At all times, Sharma and his family owned and rented out the premises to tenants all of whom were white until the plaintiff was wrongfully evicted.

162. When the tenant moved onto the premises, the premises was equipped with a gas

27

furnace and water heater, which Sharma and or his agents unlawfully and negligently installed in violation of the installation manual and the D.C. Housing Regulations, creating unsage living conditions.

163. The venting system as set up for both the furnace and water heater was grossly inadequate. The duct work was improperly sealed and the connector pipes for both the furnace and water heater were not the proper size. Sharma and or his agents failed to connect the heater with a properly sized vent pipe, chimney, or other contrivance for discharging the CO gas and other toxic fumes outside of the premises. The toxic fumes were concentrated inside the premises and were inhaled by the plaintiff. The combined system generated BTU levels in the neighborhood of 140,000.

164. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at the time the heater was delivered to Sharma, Sharma received a printed a notice or set of instructions prepared by the manufacturer informing Sharma and his agent of the requirements for proper installation and operation. The landlord knew or had reason to know that installation of the heater without proper ventilation, with improperly sized connector pipes, and with inadequate sealing of the duct work, would threaten human life and present a clear and present danger to the plaintiff.

165. The landlord had the duty to install and maintain the furnace and the water heater in a safe, lawful, and proper manner.

166. When the plaintiff moved onto the premises, the chimney was blocked, further preventing an escape route for toxic gases. It was Sharma's duty to insure that the Chimney was not blocked before he rented out the premises for residential purposes.

167. Sharma failed to properly maintain, inspect, install the furnace, water heater, and chimney. In addition, the size of the water heater was too small for the capacity of the house. Nor had Sharma obtained any permits and or licenses required to rent out housing accommodations.

168. As a result of the inhalation of CO, the plaintiff continues to suffer from memory problems, inability to speak at times, debilitating headaches, frequent colds, body aches, muscle soreness, inability to comprehend written and spoken information, inability to retain information, numbness and tingling sensations, and swelling and rapid fatigue.

169. On April 27, 2002, the plaintiff suffered her first seizure. Sharma's failure to provide for proper ventilation on the premises is the proximate cause of plaintiff's medical condition.

170. Prior to moving onto the premises, the plaintiff had no pre-existing medical conditions and worked as a fitness instructor in several gyms.

171. As a proximate cause of plaintiff's injury, Sharma and his family provided, operated, and maintained the premises with the knowledge, actual or constructive that the premises contained unsafe conditions.

172. Under the D.C. Housing Regulations, the conduct of the landlord and his family and agents constitutes negligence. Their conduct was in needless and reckless disregard of the rights of the plaintiff, and involved such an entire want of due care as to indicate conscious indifference to the rights, welfare, and safety of the plaintiff.

173. Plaintiff also relies on the doctrine of res ipsa loquitur given that the installation of the furnace and water heater at the premises was in the exclusive control of Sharma, his family,

29

agents, and employees. Similarly, the chimney and its maintenance was in the exclusive control

of Sharma, his family, agents, and employees. Plaintiff did not have the means to ascertain the

method or manner in which the furnace, chimney, and water heater were installed. The injury

suffered by plaintiff is of the type that in the ordinary course of events would not have occurred

without negligence on the part of Sharma, his family, agents, and employees.

174. (3) CAUSE OF ACTION - **Negligent Maintenance of Premises**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the

paragraphs above as though fully set forth here.

175. Under the provisions of the D.C. Housing Regulations, housing providers are

required to put the premises in a condition fir for human occupation before renting, and to repair

all subsequent dilapidations, other than those caused by the tenant's want of ordinary care that

renders the premises untenable.

176. Sharma and his family and agents failed to comply with the law leaving the premises

unfit for human habitation. When Renton moved from the premises, Sharma refused to have the

large piles of garbage removed from the backyard.

177. Commencing on or about September, 1998, and continuing through the unlawful

eviction, the plaintiff repeatedly notified the landlord both orally and in writing of the defective

and dangerous conditions that she was aware of and requested that Sharma have them repaired.

He either refused or failed to make a timely repair. Some of the notices were returned.

178. As a result of Sharma's refusal to make needed repairs, the plaintiff suffered property

and economic damage including but not limited to mold and mildew covered person property in

the basement including books, luggage, and personal effects collected from around the world that

30

cannot be replaced. The CO inhalation and consequences had a devastating impact on her studies and career.

179. Sharma's failure to properly maintain his property constitutes a nuisance under the D.C. Housing Regulations. Despite his knowledge, he failed to abate the nuisance.

180. Sharma's actions as described above are oppressive and malicious within the meaning of the D.C. Housing Regulations, in that they subjected the plaintiff to cruel and unjust hardship in willful disregard of plaintiff's rights and safety. Accordingly, plaintiff is entitled to punitive damages.

181. (4) CAUSE OF ACTION - Refusal to Obey Court Order

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

182. On November 23, 1999, the plaintiff was granted a Temporary Restraining Order (8301-99) which became a permanent injunction barring the landlord from changing the locks or committing any other acts to evict the plaintiff absent proper legal action.

183. Subsequent to the order, Sharma attempted to have the utilities turned off and or put in his name.

184. (5) CAUSE OF ACTION - **Constructive Eviction**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

185. Sharma's failure to maintain the premises in accordance with local law, his attempt to turn off the utilities, and to refuse to make timely repairs of housing code violations created an unsafe environment and amounts to constructive eviction on the part of Sharma, his family,

31

agents, and employees.

186. (6) CAUSE OF ACTION - **Breach of Covenant of Quiet Enjoyment**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the
paragraphs above as though fully set forth here.

187. Under the D.C. Housing Regulations and the RHA, a housing provider covenants to
afford peaceable and quiet enjoyment of leased premises. Sharma, his family, and counsel failed
to comply with this statutory mandate with numerous litigations and failure to properly unkeep the
premises in a habitable fashion. Sharma's actions violated D.C. Code 42-3507.01(2003).

188. (7) CAUSE OF ACTION - **Wrongful Eviction**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the
paragraphs above as though fully set forth here.

189. The D.C. Code and the RHA have specific and limited terms for the eviction of
tenants, most of which are connected to the non-payment of rent. The D.C. Code specifically
includes the term "subtenant" in the definition of "tenant." The plaintiff has a signed lease and is
thus a tenant according to the D.C. Code. She made timely rent payments. Thus, the plaintiff's
wrongful eviction is counter to the D.C. Code, is clearly contrary to public policy, and supports
racial discrimination.

190. Plaintiff's eviction was without cause and in violation of the requirements mandated
by statute. The wrongful eviction is in violation of the D.C. Code 42-3507.01 and 42-3503.01 and
the Rental Housing Act. The eviction violates plaintiff's right to due process. Thus the plaintiff
is entitled to statutory damages.

191. Given the specific restrictions on eviction in this jurisdiction, Sharma and his

32

counsels violated D.C. Code 42-3505.01(2003). The plaintiff has no adequate remedy at law. Unless the court grants the requested relief, the plaintiff will be irreparably harmed and the status quo will be unalterably changed.

192. (8) CAUSE OF ACTION - **Breach of Warranty of Habitability**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

193. By failing to renovate and maintain the premises and repair violations with notice to the local authorities, Sharma violated D.C. Code 42-3503.01. By his actions described above, Sharma violated DCMR 301.1, 302.1, 302.2(a) and (b). Sharma breached his duty by his actions described above.

194. (9) CAUSE OF ACTION - **Self Help**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

195. On or about November, 1999, Sharma and S&B did threaten the plaintiff with changing the locks.

196. Sharma with the intent to unlawfully terminate plaintiff's tenancy did willfully and maliciously, contact the local utilities to terminate services to the premises.

197. Sharma and S&B did enter the premises on several occasions without permission to leave legal notices for the plaintiff.

198. Upon receiving final notices, the plaintiff immediately contacted the utilities so that services would not be terminated. As a direct and proximate result of the actions of Sharma and his counsels, the plaintiff has suffered and is suffering general damages to be included in this

33

complaint.

199. Plaintiff is entitled to statutory treble punitive damages under the D.C. Housing Regulations for Sharma's self help which has been abrogated by statute.

200. (10) CAUSE OF ACTION - **Retaliatory Eviction**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

201. At no time prior to or during the plaintiff's tenancy was the premises legally habitable while being owned by Sharma.

202. Plaintiff has duly performed all conditions, covenants, and promises required to be performed by plaintiff under the lease in accordance with its term and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of Sharma, his family and agents.

203. Throughout her tenancy the plaintiff informed Sharma of problems with the house. He was subsequently cited for housing code violations. Plaintiff is informed and believes that Sharma's actions were in retaliation to the plaintiff's complaints. Sharma did not seek to evict the plaintiff until after she began to report him to the housing authorities. Plaintiff furhter alleges that because the first five of Sharma's actions were decided in plaintiff's favor, Sharma's retaliatory response has risen to the level of a vexatious and malicious vendetta.

204. As a further result of Sharma's retaliatory actions, the plaintiff suffered lost wages, lost opportunities for employment, and failed to complete a time sensitive contract.

205. Sharma and his counsels and agents violated D.C. Code 42-3501.01, the RHA, and the DCHRA as retaliation is specifically prohibited and to be presumed under the circumstances

34

of this case. Sharma's actions entitle the plaintiff to punitive damages.

206. (11) CAUSE OF ACTION - **Breach of Contract/Failure to contract**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

207. The plaintiff entered into an oral contract with Sharma in which he agreed to sell the premises to the plaintiff. The plaintiff relied on that contract to her detriment and even made some improvements on the property.

208. The plaintiff had the premises inspected and appraised so she could determine a fair price. Thereafter, Sharma refused to contract with the plaintiff and sought to evict her given her race and status as a full time student.

209. (12) CAUSE OF ACTION - **Defamation**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

210. Sharma represented to PEPCO and to Washington Gas in writing that the plaintiff is unable to pay her bills. By doing so, he defamed her good name and reputation.

211. Sharma further defamed the plaintiff in the community by following through with an eviction. An eviction crew came to the front door, broke through the door and entered the premises. Sharma contacted the courts and local authorities without cause with the intention and purpose of defaming Burnett and ruining her reputation.

212. (13) CAUSE OF ACTION - **Assault**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

35

213. Sharma, his family and agents made some repairs leaving a thick dust coating all over the premises including the air. Sharma failed to provide funds for an alternative place to stay. The plaintiff was forced to inhale the thick visible dust and suffered physical injury resulting in coughing and difficult breathing.

214. Plaintiff was also exposed to CO and black toxic mold at the premises. As a result of learning about these conditions and Sharma's slow response, the Plaintiff was placed in apprehension and fear of farm. Such violations are to be included in those considered under 18 U.S.C. 241 and 242.

215. (14) CAUSE OF ACTION - **Abuse of Process**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

216. S&B misstated the purpose of the action on each complaint filed. L&B refused to accept a subpoena and used choice words to tell the process service to leave the office.

217. By their actions described above, Sharma, and his counsels failed to follow standard procedure including the rules of the court. By so doing, they abused process.

218. (15) CAUSE OF ACTION - **Promissory Estoppel**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

219. Sharma promised plaintiff Burnett that he would sell her the premises. The plaintiff relied on that promise and changed her position and perspective in reliance and expectation on that promise. Sharma then breached the promise by having the plaintiff wrongfully evicted and by refusing to contract with her. Sharma was assisted in his efforts by his family, both his counsels,

36

and by the state actors. By their actions, the defendants violated plaintiff's interests and acted in a discriminatory manner and against public policy to prevent the making and enforcement of contracts.

220. (15) CAUSE OF ACTION - **Malicious Prosecution**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

221. By his actions described above, including numerous filings on causes of action that have already been determined, Sharma and his counsels have maliciously prosecuted and filed cases against the plaintiff. Sharma and his agents filed approximately seven cases against the plaintiff. Such multiple actions support the cause of malicious prosecution.

222. (16) CAUSE OF ACTION - **Intentional Inflection of Emotional Distress**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

223. Sharma's actions as described above including but not limited to multiple filings, failure to properly maintain the premises in a habitable condition, and bad faith were conducted with a reckless disregard of the probability of causing emotional distress. As of a result of Sharma's legal actions against the plaintiff, she lost her employment and missed numerous other opportunities. Employers did not look kindly on her having to miss work and appear at court constantly. The eviction crew came to her house in broad daylight on a block where she shared dinner with neighbors and attended black parties. As a result of all of the above in addition to exposure to CO and black toxic mold, the plaintiff did suffer extreme mental anguish, depression, emotional distress, and pain and suffering.

37

224. (17) CAUSE OF ACTION - **Unjust Enrichment**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

225. While failing to make needed repairs and conduct proper maintenance and upkeep of the premises, Sharma and his agents and family rented out the premises for residential purposes exposing the plaintiff to the clear and present danger of mental disability and death from exposure and inhalation of CO.

226. Sharma failed to obtain the proper permits and licenses to rent property for residential purposes. Despite his failure to comply with the law, Sharma accepted rent payments and even raised the rent. Under the circumstances of this case, Sharma is unjustly enriched with the risk of his negligence suffered by the plaintiff. Accordingly, the plaintiff is entitled to a refund of all rents paid for residing at the premises and those paid into the court registry as well.

227. (18) CAUSE OF ACTION - **Conspiracy**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

228. Each of the defendants conspired with one and or another of the other defendants to deprive the plaintiff of her civil and other protected rights. Numerous acts were committed in furtherance of the conspiracy as detailed above causing injury to the plaintiff also noted above.

229. Sharma produced alleged lease with Jones after the fact without any mention of the lease prior to litigation.

230. Brand and Sharma both refer to Burnett several times as a "roommate." However, neither Brand nor Sharma are party to the signed lease between Renton and Burnett and are not

38

entitled to speculate at its meaning. The lease contract uses the legal terms "landlord" and "tenant." Renton is a licensed attorney in the District of Columbia and her language is quite specific. See Jones-Burnett lease above at Exhibit 1.

231. (19) CAUSE OF ACTION - **Obstruction of Justice**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

232. Sharma agreed to have master lease authenticated but later refused in an act of hostility and bad faith.

233. By their actions described above, the defendants have engaged in obstruction of justice. The plaintiff is informed and believes and on the basis of such information and belief alleges that Sharma, his counsel and agents have paid off intended witnesses such as Connie Lyerly, a former neighbor which whom the plaintiff has been friends. The plaintiff and Ms. Lyerly, a single parent, used to go shopping together and socialize. Lyerly write an affidavit for Burnett which appears above but Lyerly no longer speaks to Burnett, refuses to return phone calls, and is "unavailable" when Burnett drops by to say hello. The plaintiff alleges that Lyerly was given something by Sharma and or those in privity with him in exchange for ending her freindship and support of Burnett.

234. Various repairmen and other potential witnesses all of whom have done work on the house suddenly "left" their places of employment after Burnett turned over their names and reports to Sharma, and L&B. Such "coincidence" is beyond reason. The plaintiff alleges that Sharma and L&B have interfered with and obstructed justice by their actions described above.

235. When L & B was served with a subpoena, a partner cussed out the process server and

told him to get out of the office. L & B had served Burnett numerous subpoenas and she

complied with each one.

236. Sharma Law Group closed out Sharma & Banjari in part in an attempt to avoid

liability for its actions in this litigation.

237. (20) CAUSE OF ACTION - **Fraud**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the

paragraphs above as though fully set forth here.

238. Sharma represented his own specific refusal to pay the utility bills for the premises as

plaintiff's inability to pay. At this time, he was subject to a permanent injunction that clearly

prohibited this type of action.

239. Renton signed a sworn statement in the form of a lease which states that she cannot

sublet without Sharma's consent and or approval. The plaintiff is informed and believes and on

the basis of such information and belief alleges that the form is fradulent, that Renton signed this

form after the fact and specifically for the purpose of supporting Sharma's eviction case and in

retaliation against Burnett for filing the restraining order against her husband, Eric Renton.

240. The witnesses signature is written in the exact same hand writing as that of Jennifer

Jones and the person who "witnessed" the signature is apparently deceased. Sharma refused to

authenticate the signature or form.

241. In the alternative, if the signatures are valid, the pattern and practice of subletting

with the subtenant being solely selected by Renton, had been permitted for the approximate ten

year period that Renton resided on the premises. Renton's selection had become the pattern and

practice despite the lease. Moreover, the lease states that Sharma may not refuse a sublet based on

40

arbitrary reasons. In this instance, race qualifies as an arbitrary reason. Furthermore the lease is terminated by the date which appears on its face but was presented as a valid and enforceable contract to the court.

242. Brand argues that Burnett's lease terminates with the primary lease. This termination is impossible as the primary lease terminated with the date on its face and expired prior to Burnett's moving onto the premises.

243. Marc Nocera, an attorney under the control and leadership of Michael Brand, a partner at L&B, mailed the plaintiff a form which he stated he had filed. This motion presumed that the plaintiff failed to make timely payments into the court registry. With the filing of this form, the defendant ceded his case as all of plaintiff's payments were made in a timely fashion. Plaintiff filed the required motion to bring this matter to the court's attention and it was ignored. The plaintiff even asked the court to ask Nocera if he had sent such a form. The court ignored the request and Nocera remained silent. As a pro se litigant the plaintiff had no idea that this motion existed until she received it from Nocera. Nocera and Brand knew that they were outside of their legal bounds by proceeding with the case against Burnett which was decided against her. By moving forward with the case that was decided in Sharma's favor, L&B proceeded fradulently, in bad faith, and with knowledge that they had no basis upon which to prosecute the case.

244. Sharma claims that Burnett was on premises unlawfully and not a tenant, but he did not ask Renton to leave premises or request that she quit or cure (to comply with her expired lease) when he admits to learning of Burnett's presence. Sharma's actions demonstrate consent to the sublease and that he clearly condoned Burnett's subtenancy on the premises. He lied about his actions in an effort to avoid culpability for his failure to comply with local and federal regulations.

245. (21) CAUSE OF ACTION - **Perjury**

Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

246. Sharma, his agents and counsel have misrepresented information to the court and have made statements under oath that is contradictory to the truth and the record. Such statements were made in complete disregard to justice, the rules of the court, ethical considerations, and the solemn oaths by which they swore to abide.

247. At a hearing in chambers before the Honorable Judge Haywood, Sharma stated that he *never* knew Burnett was there on the premises. In a deposition, Sharma stated that he knew of her presence as of June, 1999. Sharma states that he went to the house for repairs but never met roommates.

248. At trial, Sharma was awarded a judgment but that judgment was based on perjury and mistake. The burden of proof was placed on the defendant rather than the plaintiff. Moreover, Burnett's tenancy stems from the legal contract she signed with Jones and Sharma's clear knowledge that she lived on the premises as a subtenant. Sharma and L&B argued that Burnett must prove she had a tenancy through Sharma. The tenancy was through Renton with Sharma's consent and approval.

249. Sharma states that he never offered the premises to Jennifer and that Burnett never made an offer for the house.

250. Brand argues that a subtenant is not a tenant under the statute. However, the statute specifically defines tenant to include "subtenant."

251. Sharma states he received no calls from Burnett regarding renting the premises.

42

252. At trial L & B stated that there is no privity of contract or estate with Burnett and that Sharma was unaware of her presence. Both Sharma and L & B represented this lie to the court. Without privity, Sharma has no basis to bring a case against Burnett. Sharma and L & B had copies of all of Burnett's rent checks made out to Jones. Burnett saw the exhibit by accident. Sharma and L & B introduced false material statements to the jury, into evidence, committed perjury and violated other judicial standards of this court as referenced above in order to wrongfully win a judgement.

253. Sharma states that he did not raise the rent after 1993. See Exhibit 9, p. 97. Rent checks demonstrate that he did indeed raise the rent.

## Prayer for Relief

WHEREFORE, plaintiff requests judgment as follows:

1. That this Court take immediate jurisdiction over CA 51649-01, a case related to this action and 2002 CA 009879, a current pending state matter also related to the instant action.

2. That this Court consolidate the pending state action with this case.

3. That this Court grant judgment against the defendants jointly and severally.

4. That this Court hold Sharma, his agents, and counsels, criminally liable for their actions.

5. That the Court vacate the judgment in CA 51649-01.

6. That the Court order the immediate eviction of the Sharma family from the premises and bar anyone connected to Sharma, his agents, family, or employees from using the address or premises for any reason pending the final outcome of this matter.

7. That the Court issue a declaratory judgment that the lease manufactured by Sharma between

43

himself and Renton is null and void and cannot be used as a basis for litigation.

8. That this Court grant judgment specifically against the attorneys related to this matter: Onkar Sharma, Esq., Michael Brand, Esq. Marc Nocera, and Jennifer Renton, on the charges of fraud, conspiracy, and obstruction of justice, and any other appropriate charges, and that they be suspended for a period of five years.

9. Issue a mandatory injunction returning the plaintiff to the possession of the premises and permit the plaintiff to change all of the locks.

10. Grant an injunction prohibiting the defendants, their agents, employees or anyone in privity with them from denying the plaintiff any protected right mentioned in this petition.

11. Order specific performance mandating that Sharma, the owner, sell the premises to the plaintiff for not more than the tax assessed value of &186,000 (at the time of the violation) as part of the loss of the benefit of the bargain and that Sharma pay all fees relating to both the purchase and selling of the premises.

12. That the Court grant judgment against the defendants of an award of damages, compensatory, special, and punitive, to compensate the plaintiff, and make her whole, and insure that such actions complained of here will not re-occur, the amount of the award to de be determined at trial. Damages are also to include future injury and harm to plaintiff.

13. Award the plaintiff treble damages for the various causes of action where it is permitted.

14. Order Sharma to cover all medical costs, past, current and future related to her medical conditions as a result of injuries sustained from her time at the premises.

15. Order the award of all funds in the registry plus interest to be awarded to the plaintiff immediately.

16. Enjoin Sharma, his agents, family and employees, and anyone in privity with them from pursuing legal action, filing a complaint against, harassing, intimidating, or bothering the plaintiff unless they specifically request Leave of Court to do so and are specifically granted Leave of Court to do so. Order that the request must include an appendix of all cases filed against the plaintiff and a certified copy of all outcomes of the cases.

17. Order Sharma to reimburse the plaintiff all rental funds since her eviction from the premises.

18. In the alternative, Order L&B and the SLG to pay the plaintiff $500,000 each, Order Sharma to enter into a 99 year lease with the plaintiff with the rent fixed at $1200, the amount the white tenant paid with no restrictions on the lease with regards to subletting or making improvements or any other restrictions that did not pertain to the white tenant as explained in this petition.

19. That the Court order all monies in the Court registry to be awarded to the plaintiff, and Order Sharma to pay the plaintiff the sum of $3,000,000.

20. That the Court Order the state actors to pay the plaintiff the same amount of $3,000,000 as Sharma.

21. Order such other relief as the Court may deem appropriate under the circumstances herein.


Respectfully Submitted,


Joyce Burnett
Pro se litigant         4408 39th St. N. W
P.O. Box 6274
Washington, D.C. 20015 Washington, D.C. 20016
(202) 294-7936

45

SUBSCRIBED AND SWORN TO before me this 8th day of December, 2005, by Joyce Burnett.

_Last Orcene Ford_
_Notary_

My Commission Expires 1/08/2010