## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| Joyce Burnett | § | |
| P.O. Box 6274 | § | |
| Washington, D.C. 20015 | § | |
| Plaintiff | § | Case No: 03-2365 and 06-0037 |
| v. | § | **RBW** |
| | § | |
| Amar Sharma | § | |
| Anasuya Sharma | § | |
| Amit Sharma | § | |
| 4801 41st Street NW | § | |
| Washington, D.C. 20016 | § | |
| | § | |
| Washington Agents for Service, Inc. | § | |
| Loewinger & Brand, PLLC | § | |
| 471 H Street, NW | § | |
| Washington, D.C. 20001 | § | |
| | § | |
| Jennifer A. Renton, Esq. | § | |
| 531 Highland Dr. | § | |
| Edgewater, MD 21037 | § | |
| | § | |
| Sharma Law Group | § | |
| (Formerly Sharma & Bhandari | § | |
| 9911 Georgia Ave. | § | |
| Silver Spring, MD 20902 | § | |
| | § | |
| District of Columbia | § | |
| 441 4th Street, NW Suite 800 South | § | |
| Washington, D.C. 20001 | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S SECOND AMENDED COMPLAINT AND JURY DEMAND

1. Plaintiff, pro se, brings this action against the defendants and seeks injunctive and declaratory relief, specific performance, and monetary damages, under the Civil Rights Act of 1866, as amended, 42 U.S.C. 1981 et seq, the Fair Housing Act of 1968, as amended (FHA), 42 U.S.C. § 3601 et seq., Americans with Disabilities Act, 42 U.S.C.

RECEIVED

MAY 1 6 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

12101 et seq., federal, state and common law for claims arising out of defendants' violations of plaintiff's rights.

## JURISDICTION AND VENUE

2. Plaintiff brings this action against defendants to redress the violation of her rights secured by the Constitution of the United States, federal and state law. This Court has jurisdiction over the subject matter of these claims pursuant to Title 28 U.S.C. §§1331, 1343 and 42 U.S.C. § 3613. The Court further has supplemental jurisdiction over the subject matter of the state law causes of action pursuant to Title 28 U.S.C. § 1367 (a).

3. Venue is properly lodged in this District pursuant to Title 28 U.S.C. §§ 88 and 1391 (b)(2) as a substantial part of the events giving rise to this claim occurred in the District of Columbia.

4. Plaintiff seeks to consolidate and or have removed to the Federal Court all previously filed complaints in the District of Columbia Superior Court: CA 51649-01, CA 01-0005488, and 02CA9879 with the instant action, pursuant to Fed R. Civ. P. 42 (a) because the instant action relates back to the claims filed in Superior Court. Plaintiff requests the consolidation and removal of claims from D.C. Superior Court so that all claims can be litigated together, in the interests of justice, and to permit the plaintiff to litigate her claims in a full and fair trial on the merits.

## PARTIES

5. Plaintiff, JOYCE BURNETT, (Burnett) appears before this Court pro se. Burnett is an African-American woman who leased a room on premises that had never been registered by the owner with the appropriate local agency as rental property. Burnett rented the room from the primary tenant and later entered into an oral agreement with the owner to purchase the premises. The premises were unsafe and Burnett suffered permanent injury. Burnett is no longer in possession but maintains her possessory interest in the property. The premises is located at 4801 41st Street NW Washington, D.C. 20016 (premises).

6. Defendant Jennifer Renton (Renton), then Jennifer Jones was the primary tenant and rented the premises from the owner for approximately ten years. Renton sublet rooms because she could not afford the premises alone. Renton is an attorney licensed in the District of Columbia.

7. Defendant Onkar Sharma of Sharma & Bhandari, now Sharma Law Group (SLG), is the first attorney to file eviction proceedings against Burnett on behalf of Sharma. The office is located at 9911 Georgia Ave. Silver Spring, MD 20902.

8. Defendant Loewinger & Brand (L & B) is a corporation registered in the District of Columbia. Its principal place of business is 471 H Street, NW Washington, DC 20001. Mr. Michael Brand and Mr. Marc Nocera are the individual attorneys who worked on Sharma's behalf as his agents and or employees.

3

9. The District of Columbia is the city where the premises is located. While the mayor is the person in charge of the city, the city controls, employs and is responsible for various agencies including the Department of Consumer and Regulatory Affairs (DCRA). The city failed miserably in doing its job.

10. Upon information and belief, Amar Sharma (Sharma) is the owner of the residence located at 4801 41st Street NW, Washington, DC 20016 (the premises). Upon information and belief, Anasuya Sharma is the wife of Amar Sharma. Upon information and belief, Amit Sharma is the adult son of Amar and Anasuya Sharma.

11. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that at all times mentioned in this complaint, attorneys Onkar Sharma (and SLG), Marc Nocera, and Michael Brand (L&B) were acting as agents, servants, and employees of Defendant Sharma and his family, and in doing the things described in this complaint were acting within the course and scope of this agency, service, employment with permission and consent express and implied, and for the benefit of Defendant Sharma, and in so doing entered into a conspiracy.

12. Plaintiff is informed and believes, and on the basis of such information and belief alleges that Renton, Anasuya Sharma, and Amit Sharma, each Defendants in this action, did conspire with Sharma and or SLG and L&B and the District of Columbia in committing the acts described in this petition.

13. Plaintiff is informed and believes, and on the basis of such information and belief alleges that Defendants acted in consort with significant state aid such that the Defendants would not have been able to deprive the Plaintiff of her rights without the aid, benefit, and influence of officials of the District of Columbia.

14. At all times material to this complaint, acting alone or in concert with others, Defendants formulated, participated in, and directed the acts and practices set forth in this complaint.

15. Plaintiff is informed and believes, and on the basis of such information and belief alleges that the Defendants acted in conjunction with each other at various times, willfully, with malice, and knowledge, and should accordingly be held liable jointly and severally.

16. All references to Sharma and his family support the allegation of conspiracy as Sharma and his family are at all times represented by counsel. The various Defendants had a meeting of the minds to carry out the deprivation and violation of plaintiff's rights.

## FACTS

17. Plaintiff brings this action as Sharma failed to comply with the statutory mandate to register the premises as rental property and to maintain the premises in a habitable condition. Sharma leased to a white primary tenant who sublet a room to Burnett.

5

18. Later, Burnett approached Sharma about purchasing the premises without knowledge of the dangerous housing code violations. Sharma agreed to sell to Burnett. After agreeing to sell the premises to the plaintiff, the plaintiff brought up some of the minor problems with the house. Sharma refused to make the repairs. Later, Sharma maintained that he did not know Burnett was on the premises and had her evicted.

19. The plaintiff met Sharma, the owner within two weeks of moving onto the premises. He invited Burnett and Renton over for tea. Shortly thereafter, he came over to the premises to check on work, Winston, his repairman was doing. In the basement, the furnace was making scratching noises. The plaintiff separately asked both Renton and Sharma about the noise and was told by both persons that it was nothing. A large thick blanket covered part of the basement wall which would later reveal a severe mold problem. Burnett moved to the premises because it is near American University where she attended law school.

20. The plaintiff resided at the premises as a subtenant with the knowledge and consent of Sharma. Sharma assumed that because Burnett was a student and African-American, she could not afford the premises.

21. Prior to moving in, the plaintiff discussed the "Jones-Burnett" lease with Renton. A true and correct copy of this agreement is attached and incorporated by reference as Exhibit 1. Renton informed the plaintiff that she had no written lease with Sharma that

6

would prevent Renton from subletting a room to Burnett.  Given that Renton is an attorney, the plaintiff took her at her word.  Renton did inform Burnett that Sharma handled all repairs unless it was something really small.

22.  Sharma came by the premises about once a month.  The premises was in poor condition.  Something on the premises always needed repair.  Sharma willingly repaired small things like screws and paint, and knobs.  Sharma is retired from the World Bank and often came with his repairman, Winston.  Occasionally Burnett and Sharma would walk down the street, 41st, and talk.  Burnett is a fitness instructor and very interested in matters of health.

23.  When Sharma learned that Burnett had an international background, he talked to her more, encouraged her, and asked if she would talk to his son, Amit.  Sharma gave Burnett Amit's resume to look over and make comments.  Burnett learned that Sharma and his wife planned to move to an apartment because the house in Maryland was too much to maintain for an elderly couple.  She saw that Renton could not buy the house and approached Sharma about purchasing the premises sometime in the late fall of 1998.  Sharma agreed to sell Burnett the premises.  Burnett had the premises inspected and appraised.  Burnett made Sharma a written offer through Winston.

24.  As she began to look more closely at the house, Burnett learned of several serious problems and brought these to the attention of Sharma.  The most serious problems were that the furnace had not been installed according to code causing the furnace to leak toxic

levels of carbon monoxide. In addition, the chimney was blocked so the carbon monoxide was trapped inside the premises. At this time, Burnett was unaware that she had suffered any permanent injury to her health.

25. Sharma's attitude changed quickly. He initiated eviction proceedings and maintained that he never knew Burnett was on the premises. Anasuya Sharma hung up the phone when Burnett called to request a repair of a broken water pipe. Burnett had attended religious services with Sharma at Catholic University where his group met. When she produced documentation that revealed his lie, he quickly changed his story to he learned of her presence at la later date.

26. Renton's attitude changed too. She grew angry with Burnett because Burnett wanted to purchase the premises which Renton could not afford to purchase. Renton had also committed various peculiar acts such as opening Burnett's mail, sneaking into Burnett's room and using her computer, and eating Burnett's food. Renton had also married and the new spouse, who had recently lost a job because of his temper, moved onto the premises.

27. The new spouse knocked down Burnett's new separate mailbox and came upstairs to her room and threatened Burnett. When Burnett requested a restraining order, the Court denied it holding that such an order would negatively effect the spouse's future. Burnett agreed not to file criminal charges against Renton's spouse because the couple would be

leaving the premises shortly. After Renton left the premises, Sharma absolutely refused to contract with the plaintiff.

28. Renton gave notice on October 18, 1999. See Exhibit 2 incorporated by reference. The plaintiff approached the owner about leasing the premises the very next day, before he put up a sign on a tree, and before he began to show the premises to anyone else. In sworn documents, however Sharma claims that he rented out the premises prior to Burnett asking for the premises. Sharma lied under oath.

29. Sharma and his family had leased the premises to Renton who is white, who had trouble paying her bills, could not afford the premises alone, and even declared bankruptcy to avoid paying her law school loans, but Sharma refused to even consider renting to Burnett who actually resided on the premises and was ready willing and able to purchase and or lease the premises. When Burnett moved onto the premises, another tenant already resided on the premises. Renton regularly sublet rooms on the premises throughout her stay. See Exhibit 3 incorporated by reference.

30. In truth and in fact, Sharma and his family are not licensed and or registered with the proper District of Columbia agency to provide housing to the public in any form.

31. In truth and in fact, Sharma and his family neglected to maintain the house in a habitable condition. Toxic carbon monoxide fumes that had no venue for escape from the premises caused permanent damage to the life and health of Burnett. Sharma knew or

should have known of the unsafe conditions at the premises as the conditions were present when he came by for repairs with his workman. If Renton or Burnett did not bring up a matter, Sharma ignored it. Plaintiff specifically asked about the furnace.

32. Sharma willfully refused to make repairs even after Washington Gas placed a red danger tag on the furnace prohibiting its use. Nevertheless, Sharma promised Burnett that the repairs would indeed be completed and continued to collect rent. Damages continued to flow from Sharma and his family's refusal to bring the house up to code.

33. Sharma repeatedly assumed that because Burnett is a student, and African-American she cannot afford to rent and or purchase the premises. He believed this fallacy all the more because Renton, a licensed attorney who is white could not afford the premises.

34. In Court documents, Sharma falsely represents that he had no knowledge of Burnett's presence at the premises and or that he learned of her presence as of a later date. Sharma and both his counsel further falsely represent that certain persons including Winston, the repairman do not exist.

35. In Court documents, Renton and Sharma falsely represent that Sharma has an authentic lease that prohibits Renton from any subleases without his permission.

36. Sharma and his adult son Amit, knew or should have known of the unsafe conditions present on the premises as both father and son were present when numerous repairs were completed.

37. Sharma has a history of violating the law. Even after Burnett was wrongfully evicted, Sharma failed to obtain required permits for modifications and changed he made to the premises. He was fined.

38. The premises was in an unsafe and uninhabitable condition prior to and during plaintiff's tenancy on the premises.

39. The District of Columbia came by and inspected the premises for violations and cited Sharma for small infractions but refused to cite him for the most dangerous violations such as the furnace not being installed properly. Even with supporting documents in hand noting the carbon monoxide problem and the red danger tag , city officials refused to cite Sharma.

40. During a hearing before the city, an officer instructed Sharma and his counsel Onkar Sharma exactly what they needed to do in order for the Court and the city to rule in his favor. This advisement took place in Burnett's presence but when Burnett requested a copy of the tape from the session, the tape was mysteriously blank even though it had been specifically checked at the beginning of the hearing.

41. Sharma tried to have utilities cut off and or transferred into his own name. They were in Burnett's name just as they had been in Renton's name.

42. As a direct result of the actions of the Sharma family, SLG and the District of Columbia, plaintiff was exposed to the clear and present danger of toxic levels of carbon monoxide. Such action amounts to collusion between private and state actors.

43. As a result of the prolonged exposure to deadly levels of carbon monoxide and toxic mold at the premises, plaintiff suffered neurological damage that may not be reversible. The plaintiff continues to suffer from seizures, multiple tumors, dizziness, headaches, joint soreness, disorientation, confusion and memory problems. Plaintiff's academic and work performance also suffered.

44. The plaintiff has no pre-existing medical conditions. Plaintiff has always been "as healthy as a horse."

45. On or about, November, 1999 and (continuing to the present time), Sharma has refused to sell, rent, or lease the premises to the plaintiff because she is African-American.

46. On or about November, 1999 and (continuing to the present time), Sharma has refused to negotiate, make or enforce a contract for the premises with the plaintiff based

on her race.  Sharma showed the premises to various prospective tenants while falsely representing to Burnett that the premises was unavailable.

47.  Plaintiff filed a complaint with the Office of Human Rights which resulted in a Determination of Probable Cause of discrimination based on race.  A copy of the Exhibit 4 is attached and incorporated by reference.

48.  Sharma and his family own, hold interests in or control, a number of properties in the District of Columbia and Maryland as well as property overseas in India.  They lease out and have sold the properties for profit.

49.  During the summer of 2003, Sharma and his counsel stated that they had the premises appraised but refused to supply the plaintiff with a copy of the document. Sharma with counsel also agreed to have questionable primary lease authenticated, but refused to hand over the document.

50.  The plaintiff is currently on medication and is unable to drive an automobile because her license has been suspended given her medical condition.  She is unable to complete projects in a timely fashion and requires a lot of additional time to finish projects that would have taken only a brief time prior to her seizures.  She still suffers from intense headaches, dizzy spells, and problems with vision.

51.  Housing code violations included water leaking from the second floor toilet through the walls and ceiling of the first floor kitchen to create toxic mold.  The furnace was not installed in compliance with the District of Columbia Code.  The chimney was also blocked.  There was also a problem with black toxic mold on the premises.

52.  On numerous occasions, Amit Sharma, supervised substandard repair work at the premises.  The work sometimes had to be done a second and third time.  Amit also made several appointments with the plaintiff and failed to show up causing Burnett to lose valuable time from work.

53. On or about November 15, 1999, Sharma sent the plaintiff a letter informing her of his intention to reclaim the premises and stating that the locks would be changed.

54. Sharma filed approximately seven actions for eviction against the plaintiff.  They were frivolous and retaliatory.

55.  Marc Nocera of L&B sent plaintiff a motion he had filed that would terminate the case in favor of Sharma assuming that Burnett had failed to timely pay her rent into the Court Registry.  All of Burnett's payments into the Court Registry were timely.  Prior to going to trial, two cases were consolidated.  Nocera failed to inform the Court of his actions.

56. During the various trials for eviction and filings, the plaintiff continued to suffer from seizures and related mental impairments. She was on medication, was dizzy and unable to represent herself.

57. Sharma failed to arrange to cover the costs of housing for the time repairs were actually being conducted as mandated by the D.C. Code. Plaintiff was unable to remain on the premises.

58. On or about June 25, 2003, Sharma and his counsel had the plaintiff wrongfully evicted.

59. In response to Defendants' violations of plaintiff's rights and the subsequent and continuing injury, the plaintiff demands relief for claims not limited to but including the all of the following set forth below.

60. Article XIV of the Constitution states in relevant part:
**No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.**

61. The plaintiff claims any and all due process rights under the Fourteenth Amendment of the Constitution of the United States.

62. Plaintiff hereby repeats and incorporates by reference all allegations set forth in the paragraphs above as though fully set forth here.

## CAUSES OF ACTION

### Violations of the United States Constitution

63. Actions of the District of Columbia violate the 14th Amendment in that the D.C. Human Rights Act permits certain exceptions which allow housing discrimination and disperate treatment based on race.

64. Actions of the District of Columbia and DCRA violate the 14th Amendment as plaintiff was denied property rights without due process of law as the District of Columbia refuses to adjudicate plaintiff's claim despite the Determination of Probable Cause Based on Race, a ruling made by a D.C. agency in plaintiff's favor.

65. Given the failure to adjudicate, the plaintiff is being denied due process of law and equal protection of the law resulting in an additional violation of the 14th Amendment by the District of Columbia.

### Second Cause of Action

66. Defendants' actions violated plaintiff's right to make and enforce contracts and to enjoy the benefit of all laws enjoyed by whites in violation of Title 42 U.S.C. § 1981. Sharma in particular, with knowledge and malice refused to lease and or sell the premises

16

to the plaintiff. Burnett acted in reliance on Sharma's promise to sell her the premises and suffered injury as a result of that reliance.

67.  In November of 1999, Sharma represented to the plaintiff that the premises was unavailable, discriminated against the plaintiff in the terms, conditions, and services provided to the plaintiff, and then signed a lease with a white couple. Such behavior violates plaintiff's right to contract as mentioned above.

68.  By failing to treat Burnett who is African American, the same as he had the white primary tenant, Renton, while claiming that the mistreatment was for other reasons, Sharma denied and impaired Burnett equal rights treatment under law based on race in violation of §1981 referenced above. Burnett was ready, willing and able to lease and or purchase the premises.

69.  By prosecuting a frivolous and malicious action against the plaintiff after L & B (Marc Nocera) filed his motion, the firm did discriminate against the plaintiff interfering with her right to contract and denying her equal rights under the law because of her race.

70.  Sharma committed the above acts based on race with the knowing assistance of other defendants. All acts explained above were completed maliciously and intentionally in furtherance of the conspiracy to deprive plaintiff of her civil rights. Defendants' actions caused injury to the plaintiff such that she suffered the abuse of racial discrimination and was wrongfully evicted from the premises. Such actions resulted in humiliation,

17

embarrassment, pain and suffering to the plaintiff. Where race is a factor as in the instant action, recovery of damages is mandated by law.

### Third Cause of Action

71. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

72. Defendants violated plaintiff's rights under 42 U.S.C. § 1982 which protects one's right to lease, sell, and purchase real property exclusive of race. Sharma sought out white tenants and completely ignored Burnett when he nailed a sign to a tree in a part of the city that is a mere six percent African-American at best according to published reports.

73. Sharma and SLG informed Burnett that the locks would be changed on the premises, an avenue of self help prohibited under D.C. law. Defendants actions violated Burnett's right to lease and purchase property given her race. Similarly, L & B violated plaintiff's rights in regards to property by prosecuting unlawful actions against her that failed to meet statutory requirements, ignored Court orders, and by the overall filing of frivolous and malicious law suits against the plaintiff.

### Fourth Cause of Action

74. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

75. Defendants' violated plaintiffs rights under 42 U.S.C. § 1983 which prohibits the deprivation of rights secured by the U.S. Constitution and laws. Plaintiff's rights are secured by the Constitution and made applicable to the states by the Due Process Clause. Plaintiff's possessory interest in the premises is a property right which has been violated by Sharma, and his counsels.

76. Sharma repeatedly stated that he knew Burnett could not afford the premises but he admits he never asked her about it. He further states that he knew she was on the premises but rented to someone else anyway. Nevertheless, Sharma pursued legal action in D.C. Superior Court numerous times under color of state law to have Burnett evicted and deprived of a Constitutionally guaranteed property right.

77. Defendants violated plaintiff's property right when Sharma challenged Burnett's tenancy, which the trial Court had ruled in Burnett's favor at least twice. Neither judgment was appealed and thus became final. Final judgments bar subsequent litigation between the same parties on the same or related cause of action under the principles of res judicata, collateral estoppel, and law of the case. Both Onkar Sharma and L & B falsely represented to the Court that the later cases were based on new and or different causes of action. All of the above actions by defendants violated plaintiff's property rights under §1983 referenced above.

**Fifth Cause of Action**

78. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

79. Malicious prosecution claims may be brought under Title 42 U.S.C. § 1983 when the defendant acts under color of state law and deprives the plaintiff of a Constitutional right. In the instant action, Sharma and his counsels filed numerous actions against the plaintiff in D.C. Superior Court to have the plaintiff evicted, even though the plaintiff paid her rent in a timely fashion and Sharma had agreed to sell her the premises. After a number of filings and judgments against him, Sharma was awarded possession of the premises. The plaintiff however, was deprived of her property right under color of law. This malicious prosecution resulted in a violation of § 1983 by defendants.

80. As a tenant in the District of Columbia, plaintiff's tenancy is subject to the provisions of the Rental Housing Act of 1985, 42-3501, et seq. This section of the D.C. Code provides that no tenant can be evicted for any reason other than for non payment of rent without written notice that complies with the statute. Burnett's rent was timely and yet she was not provided proper notice. By prosecuting another case against her without complying with statutory requirements, defendants violated the D.C. Code and deprived her of her Constitutional right to property under color of law.

## Sixth Cause of Action

81. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

82.  Defendants violated plaintiff's rights under 42 § 1985 (2) and (3) which prohibits conspiracy to interfere with civil rights.  Renton and Sharma had a meeting of the minds and prepared a master lease which prohibits subletting after the fact, and introduced this document into the Court as authentic evidence.  Both signatures appear on the document. The manufacture of a lease which the Court relies on is both an obstruction of justice and an act in furtherance of the conspiracy to deprive the plaintiff of her rights to prevent a trial on the merits.

83. Renton and Sharma committed such acts to prevent Burnett, an African-American (a protected group) from leasing and or purchasing the premises, a denial of Burnett's property right based on race.  Injury suffered by Burnett includes loss of employment opportunities, intimidation, pain and suffering, and aggravation of her medical condition. In the alternative, if the lease is authentic, it expired years ago and has no legal effect regarding the instant action.

84. Amit Sharma worked at the premises with repairmen on several occasions and at some point instructed them to turn off the hot water to harass and intimidate the plaintiff to interfere with her civil rights and make it more difficult for her to function because she is African American.  Amit made appointments for work to be done at the premises and failed to show up several times causing Burnett to lose valuable time at work.  Anasuya Sharma hung up the phone and refused to answer when Burnett called back so that Burnett could report that a water pipe had burst and needed to be repaired.

85. The Sharma family had a meeting of the minds and worked in conjunction with each other to deprive Burnett of her rights to the premises. The actions of the Sharma family serve as an obstruction of justice and acts in furtherance of the conspiracy they formed. When Burnett complained that the water was cold, Sharma, his workmen, and his family claimed they had no idea what the problem was.

86. A hearing was held before an officer at an DCRA agency. Before the hearing began, an employee tested the tape to insure that it was working properly. He stated several things, rewound the tape and then played it back.

87. During the hearing the officer took the side of Sharma and his counsel Onkar Sharma. The hearing officer specifically instructed Sharma and his counsel how to complete the paper work and where to file papers in order to win their case against Burnett. Onkar Sharma had a few questions which the hearing officer answered. When Burnett requested a copy of the tape it was mysteriously black. When Burnett requested a second hearing with a different hearing officer, she was given the same officer and the result was the same, a decision in favor or Sharma.

88. The hearing officer is a state actor who colluded with private actors such that there is a nexus for a conspiracy resulting in an agreement and a meeting of the minds. The state actor knew what he was doing and for that reason erased the tape. The result was the wrongful eviction of Burnett from the premises. Onkar Sharma, Sharma and his family,

and the state actor knew of and had the power to prevent or aid in the prevention of Burnett being deprived of her property and civil rights based on race. The defendants refused to do so resulting in the commission of a wrongful act.

89. An inspector at DCRA (state actor) refused to cite Sharma for the CO poisoning even after he had a copy of the red danger tag from Washington Gas. The state actor's communication with Sharma, and refusal to perform his job and cite Sharma for a dangerous housing condition demonstrates an agreement of minds which supports the allegation of conspiracy. The resulting injury was the eviction of Burnett from the premises. The state actor knew the situation and could have prevented the injury and or aided in the prevention of the injury. The state actor refused to do so based on racial prejudice.

90. Onkar Sharma, Esq. (SLG) serving as the agent of Sharma and with a meeting of the minds filed several eviction actions against Burnett. Information was misrepresented to the Court to impede the fair trial and to expedite the eviction of Burnett. Even after Onkar Sharma failed to appear in Court and refused to come to the phone when the Court telephoned him from the bench directly, Sharma and his counsel refilled after a dismissal with prejudice.

91. The repeated prosecutions and refilings are both an obstruction and acts in further of the conspiracy to deprive Burnett of her rights. Sharma and his counsel did not want an African-American leasing and or purchasing the premises. Burnett suffered time lost

from work, aggravation of her medical condition, poor academic performance, pain and suffering, and intentional infliction of emotions distress.

92. L&B took over for SLG as Sharma's agent and continued to violate Burnett's rights under 42 § 1985 (2) and (3). Additional law suits were filed, false information was misrepresented to the Court for the purpose of depriving Burnett the equal protection of the law and obstructing justice. For example, Brand (L&B) argued in Court that there was no privity of estate and no privity of contract between Sharma, his client, and Burnett. However, without such privity there is no basis for legal action.

93. Marc Nocera also misrepresented information to the Court and failed to admit an act to the Court when his legal oath mandated otherwise. The actions of L&B demonstrate that they had a meeting of the minds with their client Sharma and worked in conjunction to deprive Burnett of her civil rights.

94. The repeated filings of eviction, refusal to agree to additional time to respond to motions and Court requests, false information presented to the Court, appointments for viewing the premises at their convenience are acts to obstruct justice, and in furtherance of the conspiracy to deprive Burnett of her rights based on her race. Burnett suffered an eviction from the premises, repeated seizures, pain and suffering, aggravation of medical condition, intentional infliction of emotional distress, and medical costs.

95. Sharma and his counsels further obstructed justice and committed acts in furtherance of the conspiracy by intimidating and or harassing potential witnesses. Sharma falsely represented to the Court that the workman Winston did not exist so that he would not be asked to testify so that the truth could come out. In addition, a neighbor who witnessed some of the events and who was friends with Burnett now will not speak to Burnett. Without the interference of Sharma and his counsel both of these persons would be on the witness list to testify.

### Seventh Cause of Action

96. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

97. Defendants' violated Burnett's rights under 42 U.S.C. § 1986 by failing to prevent the conspiracy they formed and actively participated in. All defendants by their actions referenced above did form part of and actively participate in a conspiracy to deprive Burnett of the rights because of her race. All defendants had knowledge of the conspiracy and yet chose to interfere with Burnett's civil rights. These defendants had the power to prevent and aid in the prevention of the commission of the conspiracy, but chose not to do so.

98. In doing the acts alleged in this petition, defendants knew or should have known that their actions were likely to deprive plaintiff of protected rights and cause injury to the plaintiff. Plaintiff is informed and believes, and on the basis of such information and

25

belief, alleges that the defendants intended to cause injury to the plaintiff and acted with a willful and conscious disregard of plaintiff's rights as secured by the U.S. Constitution, federal and state law thus entitling plaintiff to all relief requested.

99. Defendants and state actors colluded to form this conspiracy that injured Burnett. The negligence of the defendants supports a claim under 42 § 1986 for the racial discrimination and class based prejudice against the plaintiff. The defendants knew that Sharma (as one of the defendant's) was trying to evict me from the premises. The defendants had the power to prevent and or aid in the prevention of the wrongful eviction but chose not to do so. Thus a wrongful act was committed and the defendants are all party to it. Burnett was deprived of her property and civil rights and equal protection of the law.

100. Unless restrained by injunction or other remedy, the defendants will continue to violate plaintiff's right to possession of the premises and to continue to discriminate against the plaintiff in housing because of her race.

101. The plaintiff has no adequate remedy at law. Not even monetary damages will afford adequate relief for the fear, humiliation, injury, numerous lost employment opportunities, and consequences to plaintiff's health caused by defendants' deprivation of plaintiff's rights and this matter overall.

**Eighth Cause of Action**

102. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

103. Defendants violated plaintiff's rights under the FHA and the Fair Housing Amendments Act of 1988 (FHAA). Defendants' by their actions violated plaintiff's rights under the Fair Housing Act which guarantees fair housing in the United States under Title 42 U.S.C. § 3601.

104. The actions of the defendants referenced above, constitute violations of plaintiff's rights including but not limited to:

(i) refusal to sell or rent after the making of a bona fide offer, and refusal to negotiate for the sale or rental of, or otherwise make premises unavailable to plaintiff because of race and disability and matriculation; and

(ii) discrimination against plaintiff in the terms, conditions, and privileges or sale and rental or premises and services based on race and disability;

(iii) misrepresentation by defendants that the premises is unavailable based on race and disability;

(iv) interference with persons on account of their having exercised their rights;

(v) failure to make reasonable accommodations

105. Defendants' actions constitute a continuing pattern of interference, coercion, intimidation, in violation of the FHA, the FHAA. The FHAA, by its terms renders

invalid any law that purports to require or permit any discriminatory housing practice under 42 U.S.C. § 3615.

106. Plaintiff is a member of a protected class who rented and sought to continue renting and or purchase the premises, and who has been and continues to be adversely affected by the acts, policies and practices of the defendants complained of above.

107. At all times during plaintiff's tenancy, Sharma and his family have been engaged as partners in the business of renting, maintaining, and selling real estate.

108. Sharma and his family treat white people interested in housing differently from black persons interested in housing. The different treatment as described above results in disparate treatment, class based prejudice, and racial discrimination. Sharma and his family did not deny the tenancy of any other subtenant who resided at the premises nor treat them in the offensive and subhuman manner that they have treated Burnett.

### Ninth Cause of Action

109. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

110. Defendants violated plaintiff's rights under the Americans With Disabilities Act by refusing to permit her additional time to file papers and deal with Court matters. Plaintiff's rights under 42 U.S.C. § 12101 were violated by the Sharma family and their

counsel pressuring and harassing Burnett for appointments at the premises and for various other concerns related to the litigation. Defendants' acts caused Burnett to suffer additional seizures and related problems.

111. After causing the plaintiff's disability, Sharma and his family continued to refuse to rent and sell the premises to Burnett and had her evicted on the basis of her disability.

112.. Sharma and the remaining defendants committed the above acts based on race, based on class prejudice, and based on prejudice against those with disabilities. Their actions were completed with knowledge, with malice, and with reckless disregard for plaintiff's rights, health, and welfare.

**Tenth Cause of Action**

113. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

114. Defendants have violated plaintiff's rights under 18 U.S.C. § 241 and 18 U.S.C. § 242 because of the conspiracy they have entered into and participated in, and the resulting unacceptable risk of loss. Defendants' actions constitute an intentional conspiracy to injure, threaten and intimidate, under color of law to deprive the plaintiff of specific rights protected by the Constitution, federal and state law.

115. Because of the actions of defendants and as a proximate cause thereof, plaintiff has been denied her rights to equal housing in violation of the FHA, the Civil Rights Act, the ADA, and the Human Rights Act of the District of Columbia, based on race, gender, and disability.

116. Because of the actions of the defendants and as a proximate cause thereof, the plaintiff suffered physical and economic injury in addition to incidental damages.

117. Because of defendants actions, and as a proximate cause thereof, and without any actions of the plaintiff contributing thereto, plaintiff suffered mental anguish, and pain and suffering.

118. Defendants actions are willful, malicious, and reckless, entitling the plaintiff to punitive damages. Defendants by their acts described above did conspire to create an unacceptable risk of loss.

119. Sharma states that he and his family have been landlords since the 1960's. Despite accepting rent and placing others at risk, Sharma and his family never registered the premises with the proper authority and failed to comply with the RHA and the D.C. Code which mandate safe and habitable premises.

**Eleventh Cause of Action**

120. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

121. Sharma increased the rent without notice or hearing in violation of the Rental Housing Act. Sharma attempted to raise the rent on or about December, 1999, while refusing to lease and or sell the premises to the plaintiff. Sharma failed to provide written notice of the rent increase and refused to sell the premises to the plaintiff. Sharma says the house rented for $1600 even though there were severe life threatening housing code violations and Sharma failed to comply with local statutes. Sharma also failed to petition DCRA.

**Twelth Cause of Action**

122. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

123. When the tenant moved onto the premises, the premises was equipped with a gas furnace and water heater, which Sharma and or his agents unlawfully and negligently installed in violation of the installation manual and the D.C. Housing Regulations, creating unsafe living conditions.

124. In the District of Columbia, a subtenant is included in the meaning of the term tenant. Burnett had a signed lease with Renton as a subtenant. In addition, Burnett also

qualifies as an invitee given her signed lease with Renton. As both a tenant and invitee, Sharma is held responsible for his negligence under the D.C. Housing Regulations.

125. The venting system as set up for both the furnace and water heater was grossly inadequate. The duct work was improperly sealed and the connector pipes for both the furnace and water heater were not the proper size. In addition, the size of the water heater was too small for the capacity of the house. Nor had Sharma obtained any permits and or licenses required to rent out housing accommodations.

126. Sharma and or his agents failed to connect the heater with a properly sized vent pipe, chimney, or other contrivance for discharging the CO gas and other toxic fumes outside of the premises. The toxic fumes were concentrated inside the premises and were inhaled by the plaintiff. The combined system generated BTU levels in the neighborhood of 140,000.

127. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at the time the heater was delivered to Sharma, Sharma received a printed notice or set of instructions prepared by the manufacturer informing Sharma and his agent of the requirements for proper installation and operation. Sharma knew or had reason to know that installation of the heater without proper ventilation, with improperly sized connector pipes, and with inadequate sealing of the duct work, would threaten human life and present a clear and present danger to the plaintiff.

32

128. As a result of the inhalation of CO, plaintiff continues to suffer from memory problems, inability to speak at times, debilitating headaches, frequent colds, a weak immune system, body aches, muscle soreness, inability to comprehend written and spoken information, inability to retain information, numbness and tingling sensations, swelling and rapid fatigue.

129. On April 27, 2002, the plaintiff suffered her first seizure. Sharma's failure to provide for the proper installation of the furnace and water heater, and failure to provide for the proper ventilation for rental premises is the proximate cause of plaintiff's medical condition.

130. Prior to moving onto the premises, the plaintiff had no pre-existing medical conditions and worked as a fitness instructor in several local gyms.

131. As a proximate cause of plaintiff's injury, Sharma and his family provided, operated, and maintained the premises with the knowledge, actual or constructive that the premises contained unsafe conditions.

132. Under the D.C. Housing Regulations, the conduct of Sharma and his family constitutes negligence. Their conduct was in needless and reckless disregard of the rights of the plaintiff, and involved such an entire want of due care as to indicate conscious indifference to the rights, welfare, and safety of the plaintiff.

133. Plaintiff also relies on the doctrine of res ipsa loquitur given that installation of the furnace and water heater at the premises was in the exclusive control of Sharma, his family, and employees. Similarly, the chimney and its maintenance was in the exclusive control of Sharma, his family, agents, and employees. Plaintiff did not have the means to ascertain the method or manner in which furnace, chimney, and water heater installed. The injury suffered by plaintiff is of the type that in the ordinary course of events would not have occurred without negligence on the part of Sharma, his family, agents, and employees.

### Thirteenth Cause of Action

134. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

135. Under the provisions of the D.C. Housing Regulations, housing providers are required to put the premises in a condition fir for human occupation before renting, and to repair all subsequent dilapidations, other than those caused by the tenant's want of ordinary care that renders the premises untenable.

136. Sharma and his family failed to properly maintain, inspect, and install the furnace, water heater, and chimney. Sharma and his family were negligent in the maintenance of the premises leaving the premises unfit for human habitation.

137. Commencing on or about September, 1998, and continuing through the unlawful eviction, the plaintiff repeatedly notified Sharma both orally and in writing that there

34

were a number of defective and dangerous conditions on the premises. Burnett requested that Sharma have them repaired. Sharma either refused or failed to make timely repairs. Some of the notices were even returned.

138. As a result of Sharma's refusal to make needed repairs, the plaintiff suffered injury to her person in the form of inhalation of deadly toxins, mold and mildew covered personal property in the basement including valuable law books, luggage, and personal effects collected from around the world that cannot be replaced. The CO inhalation and consequences had a devastating impact on her studies, career, and employment opportunities.

## Fourteenth Cause of Action

139. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

140. When Renton moved from the premises, Sharma refused to have the large piles of garbage removed from the street behind the house just beyond the back yard premises. Sharma had knowledge because Renton, neighbors, and Burnett all informed him of the problem. Sharma's failure to properly maintain his property constitutes a nuisance under the D.C. Housing Regulations. Despite his knowledge, he failed to abate the nuisance.

141. The actions of Sharma and his family were a willful and deliberate attempt to force Burnett off of the premises, to interfere with her exercises her rights under the law, and were done in malice.

142.  The actions of Sharma and his family as described above are oppressive and malicious within the meaning of the D.C. Housing Regulations, in that they subjected the plaintiff to cruel and unjust hardship in willful disregard of plaintiff's rights and safety. Accordingly, plaintiff is entitled to punitive damages.

### Fifteenth Cause of Action – <u>Violation of Court Order</u>

143. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

144.  On November 23, 1999, the plaintiff was granted a Temporary Restraining Order (8301-99) which became a permanent injunction barring Sharma from changing the locks or committing any other acts to evict the plaintiff absent proper legal action.  Sharma violated the Court order by attempting to have the utilities turned off and or put in his name.

### Sixteenth Cause of Action - <u>Constructive Eviction</u>

145. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

146.  Sharma's failure to maintain the premises in accordance with the D.C. Housing Regulations, his attempt to turn off the utilities, and his refusal to make timely repairs of

housing code violations created an unsafe environment and amounts to constructive

eviction on the part of Sharma, his family, agents, and employees.


### Seventeenth Cause of Action – <u>Breach of Covenant of Quiet Enjoyment</u>

147. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the

paragraphs above as though fully set forth here.


148. Under the D. C. Housing Regulations and the RHA, a housing provider covenants

to afford peaceable and quiet enjoyment of leased premises. Sharma, his family, and

counsel, agents, and employees failed to comply with this statutory mandate given the

numerous litigations, failure to properly upkeep the premises in a habitable fashion, and

refusal to abide by federal and state law. Sharma's actions violate D.C. Code 42-

3507.01(2003).


### Eighteenth Cause of Action – <u>Wrongful Eviction</u>

149. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the

paragraphs above as though fully set forth here.


150. The D.C. Code and the RHA have specific and limited terms for the eviction of

tenants, most of which are connected to the non-payment of rent. The D.C. Code

specifically includes the term "subtenant" in the definition of "tenant." The plaintiff has

a signed lease and is thus a tenant according to the D.C. Code. Burnett made timely rent

payments. Thus, plaintiff's wrongful eviction is counter to the D.C. Code, is clearly contrary to public policy, and supports racial and class discrimination.

151. Plaintiff's eviction was without cause and in violation of the requirements mandated by statute. The wrongful eviction is in violation of the D.C. Code 42 -3507.01 and 42-3503.01 and the Rental Housing Act. The eviction violates plaintiff's right to due process. Thus the plaintiff is entitled to statutory damages.

152. Given the specific restrictions on eviction in this jurisdiction, Sharma, his family and counsels, violated D.C.Code 42 -3503.01 (2003). The plaintiff has no adequate remedy at law. Unless the Court grants the requested relief, the plaintiff will be irreparably harmed and the status quo will be unalterably changed.

**Nineteenth Cause of Action – <u>Breach of Warranty of Habitability</u>**

153. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

154. By failing to repair and maintain the premises of which he had notice, Sharma violated D.C. Code 42-3503.01. By his actions described above, Sharma violated DCMR 301.1, 302.1, 302.2(a) and (b). Sharma breached his duty by his actions described above.

**Twentieth Cause of Action – <u>Self Help</u>**

155. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

156. On or about November, 1999, Sharma and Onkar Sharma (SLG) did threaten the plaintiff with changing the locks.

157. Despite a Court Order, Sharma with the intent to unlawfully terminate plaintiff's tenancy, did willfully and maliciously contact the local utility companies to terminate service to the premises and or to transfer the service into Sharma's own name.

158. Sharma, Onkar Sharma, and Amit did enter the premises on several occasions without permission of the plaintiff (to leave legal notices for the plaintiff).

159. Upon receiving final notices, the plaintiff immediately contacted the utility companies so that services would not be terminated and or transferred. As a direct and proximate result of the actions of Sharma and his counsels, the plaintiff has suffered general damages to be included in this complaint.

160. Plaintiff is entitled to statutory treble punitive damages under the D.C. Housing Regulations for Sharma's self help which has been abrogated by statute.

### Twentysecond Cause of Action – <u>Retaliatory Eviction</u>

161. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

162. At no time prior to or during the plaintiff's tenancy was the premises legally habitable while being owned by Sharma. Nor had Sharma registered the premises with the appropriate local agency as rental housing.

163. Plaintiff has duly performed all conditions, covenants, and promises required to be performed by plaintiff under the lease in accordance with its terms and conditions, except for those acts that have been prevented, delayed, or excused by acts or omissions of Sharma, his family and agents.

164. Throughout her tenancy the plaintiff informed Sharma of problems with the house. He was subsequently cited for housing code violations. Plaintiff is informed and believes that Sharma's actions were in retaliation to the plaintiff's complaints. Sharma did not seek to evict the plaintiff until after she began to report him to the housing authorities. Plaintiff further alleges that because the first five of Sharma's eviction actions were decided in Burnett's favor, Sharma's retaliatory response has risen to the level of a vexatious and malicious vendetta.

165. As a further result of Sharma's retaliatory actions, the plaintiff suffered lost wages, lost opportunities for employment, and failed to complete a number of time sensitive projects.

166. Sharma, his counsels, and agents violated D.C. Code 42-3501.01, and the RHA, as retaliation is specifically prohibited and to be presumed under the circumstances of this case. Sharma's actions entitle the plaintiff to punitive damages.

**Twentythird Cause of Action – <u>Breach of Contract/Failure to contract</u>**

167. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

168. The plaintiff entered into an oral contract with Sharma in which he agreed to sell the premises to the plaintiff. The plaintiff relied on that contract to her detriment and even made some improvements on the property.

169. The plaintiff had the premises inspected and appraised so she could determine a fair price. Thereafter, Sharma refused to contract with the plaintiff and sought to evict her given her race and status as a full time student.

**Twentifourth Cause of Action – <u>Defamation</u>**

170. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

171. Sharma represented to PEPCO and Washington Gas in writing that plaintiff is unable to pay her bills. By doing so, he defamed her good name and reputation.

172. Sharma further defamed the plaintiff in the community by following through with an eviction. An eviction crew came to the front door, broke through the door and entered the premises. Sharma contacted the courts and local authorities without cause with the intention and purpose of defaming Burnett and ruining her reputation.

### Twentififth Cause of Action – <u>Assault</u>

173. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

174. Sharma, his family and agents made some repairs leaving thick clouds of dust coating most of the premises and the air. Sharma failed to provide funds for an alternative place to stay. The plaintiff was forced to inhale the thick visible dust and suffered physical injury resulting in difficulty breathing and extreme coughing.

175. Plaintiff was also exposed to CO and black toxic mold at the premises. As a result of learning about these conditions and Sharma's slow response, the plaintiff was placed in apprehension and fear of harm. Such violations are to be included in those considered under 18 U.S.C. 241 and 242.

### Twentysixth Cause of Action – <u>Abuse of Process</u>

176. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

177. Onkar Sharma misstated the purpose of the action on each complaint filed. Both Onkar Sharma and L & B filed repeated actions after losing a number of times. L&B refused to accept a subpoena and used choice words to tell the process server to leave the office. L&B also knowingly misrepresented information to the Court to interfere with Burnett's rights.

178. By their actions described above, Sharma and his counsels failed to follow standard procedure including the rules of the Court and by doing so abused process.

### Twentiseventh Cause of Action – Malicious Prosecution

179. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

180. Sharma, his family, and counsels filed a number of actions against Burnett which they lost. They continued to file even though the matter of tenancy had already been determined. Having filed so many times after so many losses, Burnett was eventually deprived of her right to property and evicted. Sharma and his counsels filed approximately seven cases against Burnett. Such multiple actions and the various losses support the cause of malicious prosecution.

### Twentiseventh Cause of Action – Intentional Infliction of Emotional Distress

43

181. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here.

182. Sharma's actions as described above including but not limited to multiple filings, failure to properly maintain the premises in a habitable condition, and bad faith were conducted with a reckless disregard of the probability of causing emotional distress. As a result of Sharma's legal actions against the plaintiff, she lost her employment and missed out on numerous other opportunities. Her grades suffered as well.

183. Employers did not look kindly on Burnett having to miss work and appear at Court constantly. The eviction crew came to the premises in broad daylight on a street where she had dinner with neighbors, attended block parties, and played with neighborhood children. As a result of all of the above, in addition to the exposure of CO and black toxic mold, the plaintiff did suffer extreme mental anguish, depression, emotional distress, and pain and suffering.

## Twentiseventh Cause of Action – <u>Unjust Enrichment</u>

184. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

185. While failing to make needed and requested repairs and conduct proper maintenance and upkeep of the premises, Sharma and his agents and family rented out

the premises for residential purposes exposing the plaintiff to the clear and present danger of mental disability and death from exposure and inhalation of CO.

186. Sharma failed to obtain the proper permits and licenses to rent property for residential purposes. Despite his failure to comply with the law, Sharma accepted rent payments and even raised the rent. Under the circumstances of this case, Sharma is unjustly enriched with the risk of his negligence suffered by the plaintiff. Accordingly, the plaintiff is entitled to a refund of all rents paid for residing at the premises and those paid into the Court Registry.

### Twentiseventh Cause of Action – <u>Conspiracy</u>

187. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

188. Each of the defendants including the state actors conspired with one or another of the defendants to deprive the plaintiff of her civil and other protected rights based on her race. Numerous acts were committed in furtherance of the conspiracy as detailed above causing injury to the plaintiff as also noted above. Such acts could not have been committed without a meeting of the minds and agreement amongst the co-conspirators.

189. For example, Sharma and Renton produced an apparent master lease after the fact, without any mention of the lease prior to the litigation.

### Twentiseventh Cause of Action – <u>Obstruction of Justice</u>

45

190. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

191.  Sharma, Onkar Sharma, and L&B misrepresented critical information to the Court. Sharma agreed to have the master lease authenticated and then refused in an act of hostility and bad faith.

192.  The plaintiff is informed and believes and on the basis of such information and belief alleges that Sharma, his counsel and agents have paid off intended witnesses such as Connie Lyerly, a former neighbor with whom Burnett was friends.  Lyerly even wrote an affidavit in support of Burnett.  See Exhibit 3 above.  Now Lyerly does not return calls from Burnett and is never available if Burnett stops by.  Plaintiff alleges that Lyerly was some how paid off by Sharma and or those in privity with him in exchange for ending her support of Burnett.

193.  Various repairmen and other potential witnesses, all of whom have done work at the premises suddenly "left" their places of employment after Burnett turned over their names and reports of work to Sharma and L&B.  Such "coincidence" is beyond reason. The plaintiff alleges that Sharma and L & B and or their agents have interfered with and obstructed justice by payment or offering other inducement and or threats to the persons mentioned.  By their actions above, the defendants have obstructed justice.

194.  When L & B was served a subpoena, a partner at L &B cussed out the process server and told him in no uncertain terms to get out of the office.  Such actions obstructed justice, prevented a trial on the merits, and deprived Burnett of her rights.

### Twentiseventh Cause of Action – <u>Fraud</u>

195. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

196.  Sharma represented his own specific refusal to pay the utility bills for the premises as plaintiff's inability to pay.  At the time Sharma was subject to a permanent injunction that clearly prohibited such action.  Burnett suffered injury to her reputation.

197.  Renton singed a sworn statement in the form of a lease which states that she cannot sublet without Sharma's consent and or approval.  The plaintiff is informed and believes and on the basis of such information and belief alleges that the form is fraudulent, that Renton signed the form after the fact and specifically for the purpose of supporting Sharma's eviction case and in retaliation against Burnett for filing the restraining order against her husband, Eric Renton.

198.  On the master lease, the witness signature is written in the exact same hand as that of Renton herself.  Apparently the person named as the witness is deceased.  Sharma refused to have the form authenticated.

47

199. In the alternative, if the signatures are valid, the pattern and practice of subletting with the subtenant being solely selected by Renton, had been permitted for the approximate ten year period that Renton resided on the premises. Renton's selection had become the pattern and practice despite the lease. Moreover, the lease states that Sharma may not refuse a sublet based on arbitrary reasons. Apparently racial discrimination and class bias is irrelevant to Sharma, Renton, and counsels. Furthermore, the lease is terminated by the date which appears on its face as a contract.

200. Brand (L&B) argues that Burnett's lease terminates with the primary lease. Such a termination is impossible as the primary lease terminated as a contract on the date on its face and expired prior to Burnett moving onto the premises.

201. Marc Nocera, an attorney under the supervisory control of partner Michael Brand (L&B), sent plaintiff a form which he stated he had filed. This motion presumed that the plaintiff failed to make a timely payment into the Court Registry. With the filing of this form, Sharma ceded his case as all of the plaintiff's payments were made in a timely fashion. Plaintiff filed the required motion to bring this matter to the Court's attention but it was ignored. At a hearing where two cases had been consolidated, the plaintiff even asked the Court to request that Nocera discuss the motion. The Court ignored the request and Nocera remained silent.

202. As a pro se litigant, the plaintiff had no idea that this type of motion existed until Nocera presented it. Nocera and Brand were aware that they were outside of their legal

bounds by proceeding with the case against Burnett. The case was decided against her. By moving forward with the case that was decided in Sharma's favor, L& B proceeded fraudulently, in bad faith, and with knowledge that they had no basis upon which to prosecute the case. Shortly thereafter, Nocera was no longer employed at L & B.

203. Sharma claims that Burnett was on the premises unlawfully and not a tenant, but he did not ask Renton to leave the premises or request that she quit or cure (to comply with her expired lease) when he admits to learning of Burnett's presence. Sharma's actions demonstrate consent to the sublease and that he clearly condoned Burnett's subtenancy on the premises. Sharma lied about his actions in an effort to avoid culpability for his failure to comply with local and federal regulations and because Burnett is African-American.

### Twentiseventh Cause of Action – Perjury

204. Plaintiff hereby repeats and incorporates by reference the allegations set forth in the paragraphs above as though fully set forth here

205. Sharma, his agents and counsel have misrepresented information to the Court and have made statements under oath that is contradictory to the truth and the record. Such statements were made in complete disregard of justice, the rules of the Court, ethical considerations, and the solemn oaths by which they swore to abide.

206. At a hearing in chambers before the Honorable Judge Haywood, Sharma with Onkar Sharma (SLG) stated that he *never* knew Burnett was there on the premises. Later in a deposition, Sharma stated that he knew of her presence as of June, 1999. The change in Sharma's statement came about after Burnett produced a copy of a book signing from when Burnett went to local book store and purchased a book from Sharma's spiritual leader. Burnett alleges that both statements are false because Sharma knew of Burnett's presence shortly after she moved onto the premises.

207. Sharma states that he went to the house for repairs by never met the roommates. Burnett alleges that this is a false statement as she met Sharma shortly after moving in.

208. At trial, Sharma was awarded a judgment but that judgment was based on perjury and mistake. The burden of proof was placed on the "defendant Burnett" rather than on the plaintiff as mandated. Moreover, Burnett's tenancy stems from the legal contract she signed with Renton (then Jones) and Sharma's clear knowledge, and consent that she lived on the premises as a subtenant. Sharma and L&B argued that Burnett must prive she had a tenancy through Sharma, but Burnett's tenancy was through Renton with Sharma's consent and approval.

209. Sharma states that he never offered the premises to Renton and that Burnett never made an offer to him for the house. This statement is false. Burnett made a written offer through Sharma's repairman.

210. Brand argues that a subtenant is not a tenant under the statue. However, the statute specifically defines tenant to include "subtenant."

211. Sharma states he received no calls from Burnett regarding renting the premises. This statement is false as Burnett called Sharma the very next day after Renton gave notice to ask about the entire premises.

212. At trial, L & B argued that there is no privity of contract or estate with Burnett and that Sharma was unaware of her presence. Both Sharma and L & B knew this to be a lie. Without privity, Sharma has no basis to bring a case against Burnett. Sharma and L & b had copies of all of Burnett's rent checks made out to Jones. Burnett saw the exhibit by accident.

213. Sharma states that he did not raise the rent. Burnett is in possession of rent checks that demonstrate otherwise.

214. Sharma and L & B introduced false material statements into the Court, and into evidence. They committed perjury and violated other judicial standards of this Court as referenced above in order o wrongfully win a judgment. Were it not for their perjury and misrepresentations to the Court and jury, the truth of the matter would have come out and Burnett would have prevailed as she did on five prior occasions.

215.  Based on all of the allegations stated above, the defendants in conspiracy one with another at various times have caused grave injury to the plaintiff no just in her person and property but also to her future.  Burnett may not be permitted to practice law because of her medical condition that was caused by the negligence and malice of Sharma and his co-conspirators.  Burnett will have limited means by which to live, to pay her student loans, and other living expenses.  While defendants actions are willful and offensive, the most serious offense in the instant action is the attempt to cover up the actions because Sharma and his remaining defendants do not believe that Burnett deserves to be treated with respect and consideration like any other human being.

## PRAYER FOR RELIEF

216.  That this Court take immediate jurisdiction over all named cases and have such cases removed from D.C. Superior Court to the District Federal Court to be consolidated with and heard with the instant action.  2002 CA 9879 in particular is a pending action and relates to the instant action as do all of the above named cases.

217.  That this Court grant judgment against the defendants jointly and severally.

218.  That the Court hold Sharma, his agents, and counsel criminally liable for their actions.

219.  That the Court vacate the judgment in CA 51649-01.

220. That the Court order the immediate eviction of the Sharma family and or any other persons residing at the premises and bar anyone connected to Sharma, his agents, family, employees, or friends from using the premises for any reason pending the final outcome of this matter.

221. That the Court rule that the lease manufactured by Sharma and Renton is null and void and cannot be used as a basis for litigation.

222. That the Court grant judgment specifically against the attorneys related to this matter because they are held to a higher standard and should know better.

223. That the Court hold attorneys Onkar Sharma, Michael Brand, Marc Nocera, and Jennifer Jones (now Renton) liable for charges of fraud, conspiracy, and obstruction of justice and that suspension of their licenses be recommended given the offensive and serous nature of their actions.

224. Order that the plaintiff is returned to possession of the premises and that she may change all locks.

225. Order specific performance mandating that Sharma sell the premises to the plaintiff for not more than the tax assessed value of $186,000 (at the time of the violation) as part of the loss of the bargain and that Sharma pay all fees pertaining to plaintiff's purchase of the premises.

226. Order that the defendants' or anyone in privity with them is prohibited from denying and or violating any protected right of the plainitiff mentioned in this petition.

227. That the Court grant judgment against the defendants of an award of damages including compensatory, special, and punitive damages, to compensate the plaintiff, make her whole, and insure that such actions complained of herein will not re-occur, the amount of the award to be determined at trial.

228. Award the plaintiff treble damages for the various causes of action where it is permitted.

229. Order Sharma to cover all medical expenses, past, present, and future relating to her medical condition as a result of injuries sustained at the premises.

230. Order that all funds paid into the Court Registry be paid immediately to the plaintiff with interest.

231. Enjoin Sharma, his agents, family, employees, and anyone in privity with them from pursuing legal action, filing a complaint against, harassing, intimidating, or bothering the plaintiff unless they specifically request and are granted Leave of Court to do so. Order that the request must include an appendix of all cases filed against the plaintiff and a certified copy of all outcomes of the cases.

232. Order Sharma to reimburse the plaintiff all rental funds paid while residing at the premises as the tenancy was illegal.

233. In the alternative, Order L & B and SLG to pay the plaintiff $500, 000 each. Order Sharma to enter into a 99 year lease with the plaintiff with the rent fixed at $1200, the amount the white tenant paid with no restrictions on the lease with regards to subletting. Order that all funds in the Court Registry be awarded to the plaintiff. Order that Sharma refund the plaintiff all funds paid in rent since her eviction from the premises. Order Sharma to pay the plaintiff the sum of $1,500,000. Order the District of Columbia to pay the plaintiff the sum of $1,000,000. Order Renton to pay the sum of $100,000 to the plaintiff.

234. Order such other relief as the Court may deem appropriate under the circumstances herein.

Respectfully Submitted,

Joyce Burnett

Joyce Burnett
Pro se litigant
P.O. Box 6274
Washington, D.C. 20015
(202) 294-7936

Washington, District of Columbia

Subscribed and sworn to before me, in my presence,

this 15th day of May , 2006

by Joyce Burnett

Antoinette M. Mayes Notary Public

My Commission Expires 11/14/2007

SUBSCRIBED AND SWORN TO BEBORE ME THIS 15TH DAY OF MAY, 2006 by

Joyce Burnett *Joyce Burtt*