**GOVERNMENT OF THE DISTRICT OF COLUMBIA**
**Office of Human Rights**

**Charles F. Holman, III**
**Director**



**LETTER OF DETERMINATION**

June 28, 2001

Joyce A. Burnett
4801 41st Street, NW
Washington, D.C. 20016

Re:  **Docket No. 00-118-H**
 **Joyce A. Burnett v. Amar Sharma, Owner**

Dear Ms. Burnett:

The Office of Human Rights (the "Office") has completed the investigation of the above-referenced Complaint. On the basis of the results of that investigation, the Office concludes:

> (1) There is **PROBABLE CAUSE** to believe that a violation of the **D.C. Human Rights Act of 1977, as** amended ("The Act") occurred, as it pertains to housing, based on your allegations of race (Black) discrimination

> (2). There is **NO PROBABLE CAUSE** to believe that a violation of the Act has occurred, as it pertains to housing, based on your family responsibilities and marital status (single).

Joyce A. Burnett is referred to herein as the **"COMPLAINANT."** Amar Sharma, Owner, is referred to herein as the "RESPONDENT."

## I. ISSUE

Whether Complainant was subjected to disparate treatment based on her race (Black), family responsibilities, and marital status (single) in the area of housing, when Respondent refused to rent to Complainant, the house located at 4801 41st Street, NW, Washington, DC.

441 4th Street, N.W., Suite 970N, Washington, D.C. 20001 • (202) 727-3900 • Fax: (202) 724-3786

Exhibit 4

Page 2
00-118-H

## II. RESPONDENT'S BACKGROUND

Respondent is the owner of rental property located in the District of Columbia. It is not exempt, for any known reason, from the laws of the District of Columbia prohibiting unlawful discrimination. It is therefore subject to the enforcement jurisdiction of this office.

## III. COMPLAINANT'S ALLEGATIONS

Complainant alleged violations of the District of Columbia Human Rights Act of 1977 as amended, D.C. Law 2-28, D.C. Code Sections 1-2501-2557 (1992).

Complainant alleged that Respondent engaged in the following act:

On or about October 19, 1999, Complainant contacted Respondent asking to rent the premises owned by Respondent and located at 4801 41st Street, N.W., Washington. D.C. Respondent refused to rent to the Complainant stating that he wanted to rent to a family. Complainant alleged Respondent discriminated against her because of her race (Black), marital status (single) and family responsibilities.

## IV. RESPONDENT'S RESPONSE

The Respondent denied that the Complainant was discriminated against on the basis of her race, family responsibilities, or marital status. Respondent stated that he was unaware of Complainant's marital status and family responsibilities. Furthermore, Respondent claims he had rented the premises before Complainant had indicated any interest in renting the property.

## V. FINDINGS OF FACT

The Office's investigation of this matter included the Respondent's sworn statement to the Office's Request for Documents and Interrogatories, the Complainant's sworn statement and rebuttal, and other applicable submissions. On the basis of the results of our investigation, the Office makes the following findings of fact:

1. September 1, 1990, Jennifer Jones signed a lease for the purpose of occupying a house owned by Respondent and located at 4801 41st Street, N.W., Washington, D.C. ("premises"). (This lease expired August 31, 1991.)

Page 3
00-118-H

2. On or about July 14, 1998, Complainant signed a lease with Ms. Jones for the purpose of occupying one room in the premises. (This lease between Ms. Jones and Complainant expired June 30, 1999.)

3. On or about October 18, 1999, Ms. Jones gave notice to both the Respondent and Complainant that she intended to vacate the premises by November 30, 1999. Specifically, Ms. Jones wrote in her notice:

> On behalf of myself and all those claiming by or through me, [I] hereby give formal notice that I will vacate the premises located at 4801 41st Street, N.W., Washington, D.C. as of November 30, 1999."

4. Ms. Jones was not married when she first leased the premises from Respondent, and remained unmarried until shortly before she moved from the premises.

5. After October 18, 1999 but before October 31, 1999, Complainant contacted Respondent and requested to lease the entire premises.

6. Respondent refused to lease the premises to the Complainant.

7. On or about October 29th, 1999, Respondent put up a "For Rent" sign in front of the premises.

8. On or about October 31, 1999, Respondent leased the premises to a White couple.

9. Complainant sent a letter dated November 12, 1999 to Respondent that stated the following:

4801 41st Street NW

Washington, D.C. 20016

November 12, 1999...

Dear Mr. Sharma:

> It has come to my attention that the former Jennifer Jones has decided not to renew her lease. She intends to move away from the above listed address. As you know, I currently sublet one of the rooms in the house.

> When I first moved into the house, I discussed the possibility of renting a room for (3) three years. I have been renting a room in your house for almost (2) years. I have always paid my rent on time, and have never breached any house rules. In fact, on one occasion, I actually paid (2) two months rent at one time to help Ms. Jones who was

Page 4
00-118-H

experiencing financial difficulty.

I am interested in renting the entire house since Ms. Jones has given you notice that she is leaving. I would like to sit down and discuss this matter with you at your earliest possible convenience. I hope we can reach an amicable agreement.

Thank you for your time and attention in this matter.

Sincerely,
Joyce Burnett

10. Complainant refused to vacate the premises and resides there to this day.


## VI.  ANALYSIS

### I.    Disparate Treatment
#### A. Disparate Treatment Legal Standard

Complainant alleged that she was subjected to disparate treatment from Respondent because of her race, (Black), marital status (single), and family responsibilities.

The order and burden of proof to be applied under the D.C. Human Rights Act to cases of disparate treatment is the standard enunciated by the Supreme Court in McDonnell Douglas v. Green, 93 S.Ct. 1817 (1973). This order and burden of proof was later enunciated by the U.S. Supreme Court in Texas Office of Community Affairs v. Burdine, 450 U.S. 248 (1981), and reiterated by the District of Columbia Court of Appeals in RAP, Inc. v. District of Columbia Commission on Human Rights, 485 A.2d 173 (D.C. 1984). Under the McDonnell Douglas standard, the plaintiff in a discrimination case has the burden of first establishing a prima facie case of discrimination. 93 S.Ct. at 1824. If the plaintiff succeeds in this endeavor, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for taking the alleged discriminatory action. Id. The defendant's burden is satisfied by setting forth, through admissible evidence, the reasons for making the decision the Complainant alleges is discriminatory. Texas Office of Community Affairs v. Burdine, 450 U.S. 248, 250 (1981). This burden may be satisfied by Respondent's production of evidence, which provides a factual basis for its decision. Id. If the defendant succeeds in carrying its burden of production, the burden shifts back to the plaintiff to prove that the defendant's stated reasons for the action are pretextual, or unworthy of credence. Id. at 254-56. At this pretext stage, the plaintiff's burden merges with his ultimate burden of proving that he has been the victim of unlawful discrimination. Id. See also U.S. Postal Service Board of Governors v. Aikens, 460 U.S. 711 (1983).

Page 5
00-1 18-H

In a more recent decision, the Supreme Court further clarified the burden of proof standard enunciated in <u>McDonnell Douglas and Burdine</u>. In <u>St. Mary's Honor Center et al. v. Hicks</u>, 113 S. Ct. 2742 (1993), the court determined that a "new level of specificity" was appropriate to the inquiry as to whether the fact-finder's rejection of the Respondent's asserted reasons for its actions mandates a finding for the Complainant. The court held that "'pretext' means 'pretext for discrimination.'" <u>Id</u>. The Complainant must show "both that the reason was false, and that discrimination was the real reason." Id. [emphasis in original]. Additionally, the court held that "[t] he fact-finder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the <u>prima facie</u> case, suffice to show intentional discrimination." <u>Id</u>. at 2547.

We will first determine if the Complainant can establish a prima facie case. In order to do so, Complainant must demonstrate that she (1) belongs to a protected group (2) the Respondent was actively seeking to find a tenant for the premises; (3) she was qualified for and sought to rent the property in question; and (4) Respondent continued to seek other renters, not in Complainant's protected class after refusing to rent the property to Complainant. Complainant only needs to establish facts adequate to permit an inference of discriminatory motive. <u>Thompson v. Int'l Ass'n of Machinists and Aerospace Workers</u>, 614 F.Supp. 1002, 1012 (D.D.C. 1985). <u>See also</u> <u>Furnco Constr. Corp. v. Waters</u>, 438 U.S. 567, 576 (1978), "plaintiff carries the initial burden of showing actions taken by the [Respondent] from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were 'based on discriminatory criterion illegal under the Act,'"(quoting <u>Teamsters v. United States</u>, 431 U. 5. 324, 358 (1977).

## B. Application of Disparate Treatment Legal Standard to the Facts of Complainant's Case

### (1) Complainant's Prima Facie Case

Complainant alleges that Respondent stated to her that he wanted to lease the premises to a family, and he refused to lease to her because of her family responsibilities, marital status and race.

Under the facts of this case, Complainant has not established a prima facie case with respect to allegations of discrimination based on marital status or family responsibilities. The Act describes "Family responsibilities" as:

> "the state of being, or the potential to become, a contributor to the support of a person or persons in a dependent relationship, irrespective of their number, including the state of being the subject of an order of withholding or similar proceedings for the purpose of paying child support or a debt related to child support." Section 1-2502(12).

Page 6
00-118-H

Complainant failed to show that she is a member of this protected class. Complainant has submitted no evidence to show that she is the provider of support for a dependent individual. Therefore, Complainant has failed to establish a prima facie case for purposes of the charge of discrimination based on family responsibilities.

With respect to the issue of discrimination based on marital status, again Complainant is unable to establish a prima facie case. Although Complainant, as a single person, falls within the protected class, and the Complainant has been subjected to an adverse action in being denied the rental of the house, Complainant has failed to meet the fourth element. The fourth element is not meet since the Complainant does not show that individuals not in her protected class were treated more favorably.

For the past ten years Ms. Jones had been leasing the premises from Respondent. Ms. Jones was single when she first signed the 1990 lease and remained single until shortly before she vacated the premises in 1999. Indeed, Complainant concedes this point in her complaint when she says that Respondent's claim that he wanted to rent to a family "is a pretext because Ms. Jones was single when Respondent rented the property to her." In addition, the individuals to whom Respondent leased the premises were also single. Although Complainant states that this couple was engaged, individuals, pursuant to the Act are either single, married, divorced, or widowed. Absent evidence to the contrary, when Complainant describes this couple as being engaged to be married, it seems more likely than not that such individuals are currently single.

Because of the failure of Complainant to satisfy the fourth element of the prima facie case, the allegation of discrimination based on marital status fails.

With respect to the allegation of race discrimination, Complaint has succeeded in establishing a prima facie case. (1) Complainant is in a protected class as an African American individual; (2) Respondent had received notice of his current tenant's intent to vacate the premises and he therefore, would be seeking a new tenant. Complainant furthermore alleges that she was qualified to lease the entire property and in fact verbally requested to rent the premises; (3) Respondent refused to lease the property to Complainant, and; (4) Respondent treated persons not in the protected class more favorably, i.e., he leased the premises to a White couple. Therefore, Complainant has established a prima facie case and the burden now shifts to Respondent.

## (2) **Respondent's Legitimate Nondiscriminatory Reason**

Respondent denied that he discriminated against Complainant based on her race. Respondent claims that he:

    1.) never had a lease with Complainant;

Page 7
00-1 18-H

2.) the lease he had with Ms. Jones forbade Ms. Jones from subletting any rooms without the Respondent's permission;

3.) he was not aware of Complainant's presence at the premises until June 1999, and

4.) he leased the premises before Complainant requested to do so. At one point in the response submitted by the Respondent he denies having any conversation with Complainant on or about October 18, 1999 about renting the premises, (nor does he recall any conversations with her after October 1999) Respondent also indicates that if Complainant had had such a conversation, she would have made reference to such conversation in her subsequent November 12, 1999 letter on the same subject.

5.) Furthermore, Respondent claims that he is a respectable citizen who worked at the World Bank where citizens from over 100 nations work together, that he is an active member of "Science of Spirituality" which has held international "human unity" conferences, and he claims he has friends of different races and nationalities

### (3) **Complainant's Evidence of Pretext**

In this last stage of the McDonnell Douglas/Burdine analysis, Complainant must prove, by a preponderance of the evidence that Respondent's alleged legitimate, nondiscriminatory reason for refusing to rent the premises to Complainant was a pretext, or cover-up for a reason based on unlawful discrimination.

Complainant does not dispute that she never had a lease directly with the Respondent, She claims only to have had a lease agreement with Ms. Jones and she submitted a copy of such document with her rebuttal exhibits.

Complainant does dispute Respondent's #3 claim, that he was not aware of her presence on the premises until June of 1999. Specifically Complainant states in her rebuttal:

> I sublet a room from Jennifer Jones on this property on June 14th, 1998. [Respondent] invited Jennifer and I for tea, but she went alone. I met him within the month. Once [Respondent] learned that I had done a few international things, he shared with me that his son, Amit wanted to join the Peace Corp. I volunteered that I had been a recruiter for the agency and would be more than willing to talk with his son. Mr. Sharma and I became friends. He takes walks early in the morning to keep in shape. I accompanied him twice... I have been over to his house several times and can describe the rooms I've been in.

Page 8
00-0118-H

Complainant also disputes Respondent's #4 claim in which he states that he rented the premises before Complainant had requested to do so. Complainant claims that a conversation did in fact occurred on October 19, 1999, in which Complainant asked to rent the entire premises after Ms. Jones moved out. Complainant states that she received notice from Ms. Jones on October 18, 1999 stating she intended to move out on November 30, 1999. Complainant immediately called Respondent the next day to inform him of her desire to lease the premises. It was at this time he said "no," that he wanted to rent to a "family." Complainant then states in her rebuttal, "In the same breath that he told me I could not have the house, [Respondent] said, 'But I still want you to help my son.' (get a job with the Peace Corp.) I was insulted and immediately sent Amit an e-mail telling him to go to his career center." Complainant included a copy of this e-mail sent to Amit, dated 21 Oct. 1999, which said the following:

> Juno e-mail printed Mon, 14 Aug 2000 20:25:29, page 1
>
> From: Joyce BurnettGeorgieGirl9 6 aiuno.covn
> To: Amitsharma877@aol.com
> Date: Thu, 21 Oct 1999 20:02:28 —0400
> Subject: resume
>
> Hi Amit. It's Joyce. Your resume is good but it could be much stronger. I would suggest that you take it to your career center and sit down with someone. For example, because you are a student, what makes you special is the degree you are about to earn. Most young people including myself put their education first. Unless you have years of experience or have done something truly amazing like win a Nobel Peace Prize at 15, generally the education goes first.
>
> Also, if you would let your father know that I won't need to stop by tomorrow because I can send you comments on email, that would be great.
>
> Joyce Burnett

Complainant states that she was present when Respondent showed the premises to several prospective renters. Complainant states that most of the people brought to look at the house when she was there were White. There were no Black individuals. During all this time she continued to ask Respondent if she could rent the house, and Respondent continued to refuse.

With respect to the November 12, 1999 letter to Respondent, Complainant states that "[i]t was only after discussing the house with him several times that I thought this might turn into a legal issue and I should start creating a paper trail. That's when I sent him the actual letter requesting the house. It was November by then."

Page 9
00-118-H

### (4) <u>Analysis of <u>Complainant's Rebuttal</u></u>

Based on the evidence submitted in this case, it is the determination of this Office, that on or about October 19th Complainant contacted Respondent and made a verbal request to rent the premises, Respondent rejected her request, and the reason Respondent denied Complainant this opportunity was more likely than not based on an unlawful discriminatory racial animus.

The reason(s) the Respondent refused to rent the premises located at 4801 41st Street is the relevant inquiry in this case, i.e. did the Respondent refuse to rent the house to the Complainant because of unlawful discriminatory reasons? The inquiry is the same whether the Complainant was living in the house at the time and wanted to rent it after Ms. Jones moved out, or whether Complainant was not living in the house at the time but rather inquired about renting the house and was turned down. Therefore, the lease issue is not one, which needs to be resolved for purposes of resolving this case.

The factual inquiry of importance is, whether Complainant requested to rent the premises and when did she make such a request. Furthermore, if Complainant did make her request on October 19, 1999, before other prospective tenants made the inquiries, why was she turned down? It is Respondent's contention that Complainant did not make any request to rent the house until the November 12, 1999 letter, at which point it had already been rented.

Submitted with Complainant's rebuttal was a statement from a neighbor, Constance Lyerly, who stated:

> It was Ms. Burnett whom told me that Ms. Jones was moving out because Ms. Jones had recently married. Ms. Burnett told me that she verbally requested to [Respondent] to lease the entire house instead of just a room. Ms. Burnett said she even sent Mr. Sharma a letter attesting to this fact. A few days later, after Ms. Jones moved out, I saw a "For Rent" sign with a 301 area code phone number written on it.

In a requested clarification on the timing of these events, Ms. Lyerly stated that these statements were made over the course of a couple conversations, but that these conversations had occurred before the "For Rent" sign was posted. In the earlier conversation, she recalls Complainant said she had spoken to Respondent about renting the property and intended to follow-up that conversation with a letter. In the next conversation she said Complainant had told her that she had sent Respondent a letter. While this does present a point of confusion, Ms. Lyerly does insist that Complainant's statement about verbally requesting to rent the premises occurred before the "For Rent" sign went up. She is certain of this because, at an early point in time, Ms. Jones had told Ms. Lyerly that Complainant was the perfect tenant. Therefore, when the "For Rent" sign

Page 10
00-118-H

was posted, Ms. Lyerly thought that it was odd that Respondent had not rented the house to Complainant.

The email message to the Respondent's son is also persuasive in that Complainant states she was offended at the idea that Respondent thought Complainant would still assist Respondent's son after the Respondent had insulted her. It is particularly persuasive in that the email date is October 21st, 1999, only two days after the conversation Complainant claimed occurred between Complainant and Respondent.

Based on the contemporaneous nature of both the conversation between Complainant and Ms. Lyerly in which Complainant stated she had verbally requested to rent the premises, and the October 21st email sent by Complainant to Respondent's son, sufficient evidence has been presented to support Complainant's allegation of disparate treatment in housing based on her race (Black). Based on the evidence presented by Complainant, Respondent has failed to show by credible evidence that its failure to accept Complainant as his tenant after Ms. Jones submitted her notice of intent to vacate the premises was based on legitimate business reasons and not based on Complainant's race.

## VII. CAUSE DETERMINATION

Sufficient evidence has been presented to support Complainant's allegations of disparate treatment in housing based upon race. Therefore, the Office has determined that a finding of **PROBABLE CAUSE** on this charge is appropriate in this matter, and **IT IS SO ORDERED.**

## VIII. CONCILIATION

The Respondent is requested to notify this Office within ten (10) days after receipt of this Determination as to whether said Respondent is prepared to pursue conciliation of this matter. Otherwise, failure to respond or to respond with a refusal to conciliate will result in this Office processing this case for a public hearing before the District of Columbia Commission on Human Rights, as provided in the District of Columbia Human Rights Act, as cited supra.

Further, all parties are advised that if conciliation is not accomplished within sixty (60) days from receipt of this letter, the subject case will be scheduled for a public hearing.

Page 11
00-1 18-H

## IX. RIGHT TO APPLY FOR RECONSIDERATION

Complainant may apply for reconsideration of this decision, as it pertains to the No Probable Cause findings, pursuant to Section 719.1 of the Office's Rules Governing Procedure and Practice for Private Sector Complaints Alleging Unlawful Discriminatory Practices, *33 DCR* 6909 (1986). Such application along with all supporting documentation must be submitted to the Director of the Office of Human Rights, in writing, within thirty *(30)* days from the receipt of this letter.

The grounds for reconsideration are limited to: new evidence, misapplication of laws, or misstatement of material facts. The request must therefore, be based on one or more of these grounds, or not timely filed, it will be subject to dismissal. **COMPLAINANT MUST INCLUDE ALL SUPPORTING DOCUMENTS AND REASONS FOR THE APPEAL IN THE ORIGINAL REQUEST FOR RECONSIDERATION.**

A copy of any request for reconsideration along with all supporting documentation will be forwarded to the other party for response within ten (10) days after receipt by this Office.

## X. RIGHT TO PROCEED IN THE DISTRICT OF COLUMBIA SUPERIOR COURT

Complainant, Respondent or any other aggrieved person on whose behalf the complaint in this matter was filed, may elect to have this case decided in D.C. Superior Court pursuant to Section 1-2545(f) of the Act. Anyone desiring to proceed in the D. C. Superior Court must give notice by certified mail to the Director and all parties to the complaint within 20 days after service of this Letter of Determination. In such cases the Director shall authorize the Corporation Counsel to file a civil action on behalf of the aggrieved party in the D.C. Superior Court.

Should you have any questions, you may contact Equal Opportunity Supervisor, Saundra White at: (202) 727-3900.

Sincerely,

Charles F. Holman, III
Director

CFH:SLW:AS