UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOYCE BURNETT )<br>)<br>v )<br>)<br>AMAR SHARMA, *et al.* )<br>_____) | CA No.: 06-0037 (RBW) |

### DEFENDANT JENNIFER A. RENTON'S MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO FILE WITHIN APPLICABLE STATUTE OF LIMITATIONS AND FOR FAILURE TO STATE A CLAIM

Defendant, Jennifer A. Renton, pro se, respectfully moves this Honorable Court, pursuant to Federal Rules of Civil Procedure 12(b)(6) to dismiss plaintiff's suit against her brought forth in plaintiff's complaint and Amended Complaint because the bringing of any claim by the plaintiff is barred by the statute of limitations and for failure to state a claim upon which relief can be granted. In support thereof, the Defendant refers this court to the attached Memorandum of Points and Authorities, which more fully explains how Plaintiff is barred from bringing any claim against the defendant by the statute of limitations and because the plaintiff has not made allegations against Defendant for which, under applicable case law, relief can be granted.

Wherefore, in consideration thereof, Defendant prays the instant motion be granted.

Respectfully submitted,

*Jennifer A. Renton*
Jennifer A. Renton, *pro se*
P.O. Box 526
Edgewater, MD 21037
(240) 460-3232

**RECEIVED**

JUN 2 0 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

JOYCE BURNETT                  :
                               :
        Plaintiff              :
                               :
v.                             :    CA No.: 06-0037 RBW
                               :
                               :
AMAR SHARMA, et al             :

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JENNIFER A. RENTON'S MOTION TO DISMISS THE PLAINTIFF'S AMENDED COMPLAINT FOR FAILURE TO FILE WITHIN APPLICABLE STATE OF LIMIATIONS, AND FOR FAILURE TO STATE A CLAIM

### Preliminary Statement

By way of background, it is undisputed that defendant Jennifer A. Renton leased a house from Amar Sharma, landlord and owner of 4801 41st Street, N.W., Washington, D.C., beginning on or about June of 1989. Under the terms of the lease Ms. Renton was liable for a monthly rental amount, which she paid to Mr. Sharma from her own personal checking account. Defendant Renton resided at the house for almost ten years, during which time she supplemented her income by subletting two spare bedrooms almost continuously to various sub-tenants. During the last year of her occupancy, defendant Renton sublet one of the spare bedrooms to plaintiff Burnett. At no time did during her long occupancy did Ms. Renton or any of the other occupants of the house ever experience any health problems of any sort as a consequence of residing there.

On or about June of 1998, in response to a classified advertisement, plaintiff Joyce Burnett applied to sublet a room and was selected over other qualified

applicants.[1] Plaintiff Burnett explained she was seeking a new place to live because she was in the process of suing her landlord at Corcoran Street and she was no longer permitted to live there. Approximately a year later, defendant Renton became engaged and married. Plaintiff Burnett did not move out. Plaintiff Burnett subsequently claimed Mr. Renton had threatened her and applied for a Civil Protection Order. Although the complaint was without merit and dismissed by the D.C. Superior Court judge who heard the case, to avoid further false accusations that resulted in legal entanglements, Mr. and Mrs. Renton decided to move. As a consequence, Mr. and Mrs. Renton gave timely notice of their intention vacate the premises. Timely notice, written and verbal, was also given to Plaintiff Burnett. Defendant Jennifer Renton thereafter took photographs of the house to document that she was leaving it in immaculate condition, turned in the keys to Amar Sharma, and moved away.

Plaintiff Burnett continued to occupy the house after she no longer sublet the room from Defendant Renton. Defendant Renton later appeared at D.C. Superior Court to testify as a witness at a hearing to evict Ms. Burnett which was scheduled sometime in 1999.[2] That was the last time Defendant Renton heard or saw Plaintiff Burnett or Defendant Sharma.[3] Defendant Renton thereafter knew nothing further about anything concerning the house at 4801 41st Street or who occupied it.

Undisputed Facts

---

[1] The other applicants were Caucasian. The other sub-tenant at the time Ms. Burnett applied, or who came shortly thereafter, was also African American.
[2] However, that hearing did not go forward because the Civil Court was unwilling to hear a landlord tenant case for which it could not grant relief.
[3] It is possible that there was one further contact between Sharma and Renton by telephone to exchange Christmas greetings.

It is undisputed that defendant Jennifer Renton did not own the house at 4801 41st Street, Washington, D.C. Defendant Renton therefore lacked the power to sell or rent the house to plaintiff Burnett. It is undisputed that Jennifer Renton leased the house for many years from its owner, Amar Sharma. It is undisputed that during that time Jennifer Renton subleased bedrooms to various subtenants, one of whom was the Plaintiff, Joyce Burnett. It is undisputed that after defendant Jennifer Renton married, surrendered the lease, and no longer occupied the house, having moved away to another state in 1999, she no longer had the power to sublease bedrooms of the house to subtenants. It is undisputed that the only authority and control defendant Renton ever had regarding the house was the power to lease the house from Mr. Amar Sharma and the power to sublease bedrooms in it to subtenants.

It is further undisputed that Amar Sharma was and is a free agent who was at no time under the direction and control of Jennifer Renton. It is further undisputed that aside from casually meeting other members of Mr. Amar Sharma's family on one or two random occasions, defendant Renton had no other contact or dealings with them.

Primary Argument

The plaintiff cannot bring any claim against defendant Renton before this court pursuant the Civil Rights Act of 1866, as amended. Defendant Renton sublet a room to plaintiff Burnett on or about June 14, 1998. On or about September of 1999, Defendant Renton ceased to rent the premises and moved away, having no further dealings with Burnett or any of significance with Mr. Sharma. On February 16, 2006, a summons in the above referenced matter, CA No. 06-37 RBW, was mailed and received by certified mail by defendant Renton some time in late February or early March, the verification of

the exact date of which is in the clerk's office. Thus, the statute of limitations for bringing an action under the Civil Rights Act of 1866, as amended has run. The U.S. Supreme Court, in *Jones v. R. R. Donnelley & Sons Company* (May 3, 2004) ruled that a federal four-year statute of limitations applies to civil rights actions brought under 42 U.S.C. § 1981 as amended by the Civil Rights Act of 1991. The statute of limitations under this statue has run and therefore plaintiff may not bring any action against defendant Renton under 42 U.S.C. 1981 et seq.

Likewise the statute of limitations has run and plaintiff may therefore not bring any action against defendant Renton under the Fair Housing Act of 1968:

> A victim can file an administrative complaint with HUD;[16] these complaints must be filed within one year of the alleged violation. Under the FHA, HUD can delegate its enforcement authority to a state or local agency whose laws are "substantially equivalent" to the FHA. As a result, HUD refers most administrative complaints to such entities, which are also known as FHAPs, because they are recipients of federal enforcement funding under the Fair Housing Assistance Program.[17] The time frames for filing complaints with FHAP agencies may be as short as 180 days.
>
> As amended in 1988, the FHA provides that any person aggrieved by a discriminatory housing practice may file a complaint with HUD. The HUD Secretary is required to complete an investigation of such complaints "within 100 days after the filing of the complaint...unless it is impracticable to do so."[18] Once these complaints are deemed filed and "perfected,"[19] an investigation ensues and the complaint is processed to conclusion in one of several ways: (1) administrative closure; (2) pursuant to a conciliation or settlement between the complainant and respondent; (3) a finding that no reasonable cause existed to believe discrimination occurred (hereafter, a "no cause" case); or (4) a finding of reasonable cause to believe discrimination had occurred (hereafter, a "cause" case).

Likewise the statute of limitations has run on any claim the plaintiff could conceivably bring against defendant Renton pursuant to the Fair housing act of 1968, as amended (FHA).

Likewise, the statute of limitations has run on any claim the plaintiff could conceivably bring against defendant Renton pursuant to 42 U.S.C. section 3601 et seq.:

**Sec. 813. [42 U.S.C. 3613] Enforcement by Private Persons**

(a) Civil Action. --
    (1)

> (A) An aggrieved person may commence a civil action in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this title, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.
>
> (B) The computation of such 2-year period shall not include any time during which an administrative proceeding under this title was pending with respect to a complaint or charge under this title based upon such discriminatory housing practice. This subparagraph does not apply to actions arising from a breach of a conciliation agreement.

Therefore the plaintiff may bring no action against defendant Renton under this statute.

Likewise, the statute of limitations has run out on the time within which the plaintiff could bring an action against defendant Renton under the Americans with Disabilities Act. In fact, the first defendant Renton ever heard that the plaintiff claimed to have a disability was when she received plaintiff's complaint.

Likewise, the statute of limitations has run on the time during which plaintiff Burnett could have brought an action against defendant Renton pursuant to 42 U.S.C. 12101 et seq. The applicable statute of limitations has run on all the above cited basis of plaintiff Burnett's claims against defendant Renton which she makes in Plaintiff's Amended Complaint. Given the great amount of time which has transpired between the

date of the plaintiff in her Amended Complaint alleges claims against defendant Renton occurred, and the date whereupon the plaintiff filed her Amended Complaint containing those allegations, every applicable statute of limitation has run and the plaintiff is barred from bringing any claim against defendant Renton. There is no law, other statutory regulation, and or common law provision that defendant is aware of whereby the plaintiff could possibly bring any action against her. Therefore, there is no jurisdiction to hear the complaints that plaintiff Burnett has raised against defendant Renton and summary judgment dismissing the complaint against defendant Renton is required.

## Secondary Argument

Although lengthy, Plaintiff's complaint fails to make any viable claim against Defendant Renton that would entitle her to relief. Plaintiff Burnett is unable to identify any act committed by defendant Renton that would support a claim against her for the simple reason that defendant Renton did not own the house and had no power to either sell or rent a house that she did not own to Plaintiff Burnett.

Pursuant to F.R.C.P. Rule 8(a) "[a] pleading which sets forth a claim for relief…shall contain…(2) a short and plain statement of the claim showing that the pleader is entitled to relief." The length of a complaint does not make up a deficiency of substance. In this case, the Plaintiff fails to show what defendant Renton could possibly have done that would entitled her to any claim for relief.

None of the assertions the plaintiff makes regarding defendant Renton form the basis of any cognizable claim against her: 1) "Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Renton conspired with Sharma, SLG and L&B, and/or the state actors, in doing the things described in this petition."

(P13); "Plaintiff is informed and believes, and on the basis of such information and belief, alleges that Sharma, both his counsel, Renton, and the state actors acted in consort with significant state aid such that the defendants would not have been able to deprive the plaintiff of fundamental rights without the aid and influence of state actors." (P 14); "Sharma, both his counsels, Renton, and the state actors worked in conjunction and did discriminate against the plaintiff based on race and in so doing denied and impaired her equal rights under the law and under color of law." (P 83); and "By their actions noted above, Sharma, both his counsels, Renton, and the state actors did violate plaintiff's rights under 42 U.S.C. Section 1981 causing injury to the plaintiff such that she was discriminated against based on race in housing and wrongfully evicted from the premises which caused humiliation, embarrassment, and pain and suffering." (P 84).

Apparently by alleging "conspiracy" and "state aid," the plaintiff hopes to somehow implicate defendant Renton in events that allegedly occurred after Ms. Renton no longer leased or occupied the house. First, plaintiff Burnett does not allege any state involvement during the time Renton occupied the house. Plaintiff's allegations do not establish that there is any way Renton knew, could have known, or should have known of any state involvement after she terminated her lease with Mr. Sharma and moved away. In any event, Plaintiff does not state how State involvement or Renton's actions at any point injured her or infringed upon her rights.

Secondly, plaintiff Burnett appears to believe that by alleging conspiracy, defendant Renton can be brought in for a whole host of allegations regarding what occurred after Renton no longer leased the house. However, all plaintiff Burnett offers in this regard is a bald assertion, which has no basis in fact, that defendant Renton

7

fraudulently signed an unnamed document, (see Paragraphs 111 and 116, 235).[4] Plaintiff Burnett then goes on to identify the "fraudulent" document as a lease (signed between Mr. Sharma and Ms. Renton around 1993) and alternatively pleads if it is not fraudulent then it proves nothing (P 118) except that subletting was permitted *during the time Jennifer Renton leased the house from Amar Sharma.* Plaintiff Burnett attempts to establish her cause of action by arguing both ways: that the lease signed in 1993 was fraudulent; and/or it proves nothing; and/or it proves that subletting was permitted. In making such variable assertions, it is clear the plaintiff hopes that the court will make an inference that will supply the gap in her failure to assert the requisite elements for a claim for relief. Whatever interpretation prevails, the signing of a lease between Amar Sharma and Jennifer Renton, of which contemporaneous copies were made, does not establish a conspiracy or any other action on the part of defendant Renton, for which a claim against her is made for which relief for plaintiff Burnett can be granted.

Plaintiff Burnett, without establishing that any duty of any sort was ever owed to her by defendant Renton as the person who sublet her a room, goes on to allege, without more, that "…Renton, and the state actors, completed various acts in furtherance of the conspiracy to deprive the plaintiff of equal protection of the law." (P107). Plaintiff's assertions establish, and it is undisputed, that defendant Renton did indeed sublet a bedroom to Plaintiff Burnett. It therefore cannot be alleged that

---

[4] In fact, the fraudulent allegations that the plaintiff makes against the defendant are actionable against the plaintiff in that they are malicious and made without any good faith basis.

defendant Renton discriminated against plaintiff Burnett in the first instance.[5] Other than that, because defendant Renton did not own the house, she could not sell it to Plaintiff Burnett. Nor could defendant Renton, after she moved out and no longer sublet the room to plaintiff Burnett, lease the house she did not own or any portion of it, to Plaintiff Burnett. At no time was defendant Renton ever able to perpetrate any of the harms alleged by virtue of the fact that she did not have ownership or control of the house. Plaintiff Burnett cannot and does not allege that defendant Renton owned or after she left, had any control over the house. Therefore, Plaintiff Burnett is unable to supply the requisite elements to make any claims against defendant Renton.

Further in the Complaint, plaintiff Burnett alleges that defendant Renton conspired to deny protected rights to the plaintiff. However, defendant Renton did not own or have control of the house after vacating it. The "frivolous" eviction law suits brought by the owner, Mr. Sharma, against the plaintiff, occurred after Defendant Renton stopped leasing the house. Therefore, the required elements necessary to make sufficient allegations which can constitute a ground for a claim of action against defendant Renton do not exist and are not alleged by the plaintiff.

Allegations in the complaint of dire health consequences the plaintiff experienced can only have occurred, per plaintiff's self-report of robust health as late as 2002. several years after defendant Renton vacated the premises in 1999. See Attached. Defendant Renton had no further dealings with the house, the defendant Mr. Sharma, or the plaintiff after 1999. Defendant Renton lived in the house for almost ten years (during which there were never any citations for house code violations) and during that

---

[5] As stated in the Preliminary Statement, Defendant Renton selected Plaintiff Burnett over other earlier and equally, if not more qualified, Caucasian applicants. At the time Ms. Burnett applied, or shortly thereafter, the other person Ms. Renton sublet the remaining bedroom to was also African American.

9

time none of the many people occupying the house ever experienced ill health as a result of living there. As recently as 2002, three years after defendant stopped leasing the house, Plaintiff Burnett represents herself as remaining in robust health. Therefore, plaintiff Burnett continues to fail to state a claim against defendant Renton for which relief can be granted.

Although the Complaint abounds in false statements, even if *arguendo* the statements made in it were true, and if viewed in the light most favorable to the plaintiff, it does not establish even the minimum requirements of a claim against defendant Renton for which relief can be granted. Defendant Renton, having leased the house for almost ten years, and having sublet a room to the plaintiff during the last year, then surrendered the lease and ceased renting the house. She never owned the house. She therefore had no power to sell or prohibit the sale of the house to plaintiff Burnett. Defendant Renton had no power to make significant repairs or prevent significant repairs from being made during the time she leased the house. After defendant Renton stopped renting the house in 1999 she had no power to make or prevent even minor repairs to the house. Defendant Renton at no time had the power, as non-owner, to lease the house to plaintiff Burnett or to prevent the house from being leased to plaintiff Burnett. Defendant Renton was never so situated as to either withhold the goods or rights Plaintiff claims to be entitled to, or to grant them. Therefore, pursuant to Fed. R. Civ. P. 12 (b)(6) defendant Renton's motion to dismiss should be granted because under any reasonable reading of the complaint, the plaintiff will be unable to prove any set of facts that would justify relief. *Conley v. Gibson*, 355 U.S. 41, 45 (1957). Where, as here, there are no allegations in the complaint which, even if proven, would provide a

basis for recovery, the movant is entitled to a judgment dismissing the complaint. At no point in her Amended Complaint does the plaintiff state a claim against defendant Renton upon which relief can be granted.

The Federal Rule of Civil Procedure permits the Court to treat a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), as a motion for summary judgment under Rule 56. Even if plaintiff Burnetts claims against defendant Renton were not barred by the applicable statute of limitations, and even if, *arguendo*, one presumed that all of the allegations plaintiff Burnett makes against defendant Renton were true and resolved all questions in favor of plaintiff Burnett, as required by applicable case law, no relief can be granted to plaintiff Burnett against defendant Renton.

Lastly, the plaintiff's Amended Complaint should be dismissed in that it was improperly filed. The Amended Complaint is virtually identical to plaintiff's original Complaint. It would appear that its sole purpose was to achieve the improper purspose of delay. Plaintiff had not sought the court's consent to file an Amended Complaint. Plaintiff has demonstrated no proper purpose of legitimate reason to file her virtually identical Amended Complaint and therefore, the Amended Complaint should be dismissed. Regarding the plaintiff's Amended Complaint, all the applicable reasons put forth in defendant Renton's Motion to Dismiss the Plaintiff's Complaint, Answers to the Complaint, and Answers to Plaintiff's Amended Complaint are hereby incorporated by reference in this Motion to Dismiss Plaintiff's Amended Complaint. In addition, applicable points of law contained in other co-defendants' motions and responses are herein incorporated by reference.

11

## Conclusion

Plaintiff is barred from bringing this Amended Complaint against defendant Renton because each and every claim plaintiff makes is brought to this honorable court after the point in time permitted by the statute of limitations. Plaintiff, even when granted the benefit of all inferences that could plausibly be drawn from the allegations she make in her complaint, cannot overcome the fatal flaw in her complaint against defendant Renton: defendant Renton did not own the house and could have no influence of any kind in what happened regarding it after she no longer leased the house in 1999. Plaintiff's bare conclusions of law and sweeping, unwarranted averments of fact will not be deemed admitted for purposes of a motion under Rule 12(b)(6). *Id.* The court need not accept the inference drawn by the plaintiff if they are unsupported by the facts set out in the complaint. Nor must the court "accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 305 U.S. App. D.C. 60, 16 F.3d 1271, 1276(1994). Because plaintiff does not set out as a fact in her complaint any basis to believe that defendant Renton had any ownership or control of the house other than to sublet a room to the plaintiff during the time Renton rented the house from Mr. Sharma.

Lastly, the plaintiff's complaint against defendant Renton should be dismissed pursuant to the Federal Rule of Civil Procedure Rule 12(b)(6). Rule 12(b)(6), whereby the court is able to terminate a lawsuit that is "fatally flawed in [its] legal premises and destined to fail, and thus spare litigants the burden of unnecessary pretrial and trail activity." *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed.Cir. 1993). Furthermore, the Court is not required to accept the plaintiff's

bald assertions and legal assertions as true, "nor will the court draw unwarranted inferences to aid the pleader." *Alicke v. MCI Communications Corp.*, 111 F.3d 909, 912 (D.C. Cir. 1997). See also *Intex Recreation Corp. v. Team Worldwide Corp.*, 390 F. Supp. 2d 21, 23 (D.D.C. 2005). Without the aid of unwarranted inferences, it is impossible to ascertain how the plaintiff has established any claim against defendant Renton for which relief could be granted.

In view of the undisputed the fact that Jennifer Renton had neither knowledge or control of what occurred after she vacated the premises in 1999, and thus, no knowledge and control of what occurred to plaintiff Joyce Burnett thereafter, this action fails. Joyce Burnett, plaintiff, has on all counts failed to establish sufficient requisite elements comprising a single claim regarding Jennifer Renton upon which relief can be granted.

Thus, in addition to not being able to bring a complaint against defendant Renton because the statute of limitations have run, the plaintiff has failed to make any viable claims against defendant Renton for which she is entitled to relief. Therefore, dismissal of plaintiff's lawsuit against defendant Renton is mandated as a matter of law.

WHEREFORE, defendant Renton prays this Honorable Court to dismiss the plaintiff's complaint against her.

                                      Respectfully submitted,

                                      _/s/ Jennifer A. Renton_
                                      Jennifer A. Renton, pro se
                                      P.O. Box 526
                                      Edgewater, MD  21037
                                      (240) 460-3232

Publications

# ANDOVER BULLETIN ONLINE

**Winter 2002**
**Volume 95, Number 2**

## CLOSE-UP

### Joyce Burnette
### Crossing Thresholds



**82** With the same high level of confidence, independence, adventure and intellectual curiosity she had when she left her ailing community of South Central Los Angeles as a 14-year-old to come to Phillips Academy, Joyce Burnett has traveled to West Africa with the Peace Corps and garnered advanced degrees in economics, international relations and law. She has taught as a Fulbright scholar at the University of Asmara in Eritrea, written one book and immersed herself in a second. To round it all off, she is a certified instructor in aerobics and yoga and has been teaching fitness since she was 15.

It all might have begun at Andover in James Couch's Spanish class. When she first walked into his classroom, she was stopped cold as he admonished his students, "When you cross the threshold, you are in Spain, and in Spain we speak Spanish."

"Oh, my gosh, you can't do this," she remembers

telling herself. But she did.

"The bar was set higher at PA and I rose to it," she says. She has been crossing thresholds ever since.

After Wesleyan University and a stint as a management trainee at the Boston Company, an investment management firm, she joined the Peace Corps as a volunteer in the West African nation of Mauritania. The country was soon embroiled in political upheaval, and Burnett realized she was in danger. She believes she was saved from harm only because she carried an American passport. Even in that difficult situation, she wasn't willing to give up. "I signed up for two years, and, by golly, I wanted to do my two years; I wasn't going home yet," she says.

She was transferred to Mali, where she worked with women's cooperatives in the capital city of Bamako, and she encountered more violent unrest there in the form of a political coup. But when the Peace Corps insisted everyone leave the city, Burnett was forced to stay on for several weeks because she was recovering from a serious motorcycle accident. Her book about her Peace Corps experiences is titled Back to Where I've Never Been: An American Odyssey in Africa.

Her year in Eritrea as a Fulbright scholar-teacher at the University of Asmara was a watershed event in her quest to learn more about African women's issues, the law and international affairs. Eritrea, which had fought a 30-year war with Ethiopia, conscripted women to fight on the front lines. Given the historic limitations on women in Africa, she was intrigued and would go and talk to a few women each day to hear their stories.

"I even taught them aerobics," she says.

One young woman told Burnett how she was forced by her husband's family, who disliked her, to divorce him, leaving her two sons behind. Burnett was appalled. But instead of harboring feelings of hatred or revenge toward her in-laws, the woman said she was now striving toward economic independence, trying to get training so she could get a job and fighting to see her sons.

"I was so impressed by these strong women," Burnett said, "that I will probably continue going back to Africa for the rest of my life."

Back home in the United States, she enrolled in the Johns Hopkins University School of Advanced International Studies, where she received a double master's degree in economics and international relations in 1995.

A few months before entering American University

in Washington, D.C., where she received a J.D. degree in 2001, Burnett took a temp job at the Washington Post. There, a colleague introduced her to a friend who was close to Isabel Washington Powell. Isabel was the first wife of the late Adam Clayton Powell Jr., the flamboyant U.S. congressman from Harlem from 1944-70 and the pastor of Harlem's famous Abyssinian Baptist Church. After she met Isabel, Burnett says, the idea for a book took shape.

"Many people don't realize Powell had a wife other than the well-known pianist Hazel Scott," says Burnett, who wants to bring Isabel and her fascinating life forward in her book Adam's Belle, a 20-chapter volume she is now writing.

"Isabel is 95, and I'm praying God keeps her here so she can enjoy this," says Burnett, who reports with confidence that the book is going to be "fabulous." It is currently in proposal form and is being reviewed by agents in New York.

Burnett plans to remain in D.C., where she hopes eventually to work in project finance, specializing in obtaining discount financing from U.S. banks for developing nations. She has two things on her plate now—preparing for the New York and California bar exams and working on the book. Meantime, she is teaching physical fitness at several gyms in the D.C. area.

"Aerobics keeps my body in balance and my sanity intact," she says.

—Paula Trespas



ANDOVER BULLETIN ONLINE  
**Winter 2001**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 20th day of June, 2006, I mailed, postage prepaid, and/or emailed, a copy of the foregoing Motion to Dismiss the Plaintiff's Amended Complaint for Failure to File Within Applicable Statute of Limitations, and for Failure to State a Claim to:

Joyce Burnett, *pro se*
4408 39th St., NW
Washington, D.C. 20016

Joyce Burnett
P.O. Box 6274
Washington, D.C. 20015

Michael A. DeSantis, Esq.
6301 Ivy Lane, Suite 800
Greenbelt, MD 20770

Michael E. Brand, Esq.
LOEWINGER & BRAND, PLLC
471 H St., NW
Washington, D.C. 20001

Sharma Law Group
9911 Georgia Ave.
Silver Spring, MD 20902

Patricia A. Jones, Esq.
Leticia L. Valdes, Esq.
District of Columbia Office of the Attorney General
441 4th St., NW, Sixth Floor South
Washington, D.C. 20001

*Jennifer A. Renton*

2

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

JOYCE BURNETT                  :
    Plaintiff              :
                               :
v.                             :      CA No.: 06-0037 RBW
                               :
AMAR SHARMA, et al             :

### ORDER TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Upon consideration of the Defendant Jennifer A. Renton's Motion to Dismiss the Plaintiff's Amended Complaint for Failure to File Within Applicable Statute of Limitations, and for Failure to State a Claim, Plaintiff's (lack of) opposition, and the record herein and it appearing that the plaintiff's claims are barred by the applicable statute of limitations and/or that there is no claim against defendant Jennifer A. Renton upon which relief can be granted, it is thereby by this Court, this _____ day of _____, 2006,

ORDERED: that the Defendant Jennifer A. Renton's Motion to Dismiss the Plaintiff's Amended Complaint for Failure to File Within Applicable Statute of Limitations, and for Failure to State a Claim should be and is hereby GRANTED. It is

FURTHER ORDERED: that plaintiff's Amended Complaint against the Defendant Jennifer A. Renton is dismissed with prejudice.

_____
Judge Reggie B. Walton

cc:

Jennifer A. Renton, pro se
P.O. Box 526
Edgewater, MD 21037

Joyce Burnett
4408 39th St. NW
Washington, D.C. 20016

Joyce Burnett
P.O. Box 6274
Washington, D.C. 20015

Michael A. DeSantis, Esq.
6301 Ivy Lane, Suite 800
Greenbelt, MD 20770

Patricia A. Jones, Esq.
Leticia L. Valdes, Esq.
District of Columbia Office of Attorney General
441 4th St. NW, Sixth Fl. South
Washington, D.C. 20001

Sharma Law Group
991 Georgia Ave.
Silver Spring, MD 20902

Michael Brand, Esq.
Loweinger & Brand, PLLC
471 H St., NW
Washington, D.C. 20001